Munnikuyson's Adm'x. *vs.* Dorsett's Adm'x.—June, 1828.

To a writ of *scire facias* upon a judgment against an intestate, the sheriff returned *nihil,* when the defendant, the administratrix, according to the record of the cause, voluntarily appeared by attorney, and a rule was laid on her to plead. After several imparlances, in 1817 a *fiat* was entered by default. In 1825 the defendant moved the court to strike out the judgment, and filed affidavits which showed, in substance, that before the writ of *scire facias* issued she had removed from the county where the judgment was obtained; that she never had any knowledge of this suit until long after the *fiat* was entered on the *scire facias,* and execution sued out, nor until after it was made the foundation of proceedings against her sureties on her administration bond; nor had she ever employed the attorney, who appears on the record, to represent her; that as soon as she had notice of those proceedings, she applied for an injunction to stay proceedings at law; that the plaintiff's attorney had been paid a part of the original judgment, and was informed that there was not a sufficiency of assets to pay the whole. The county court, thereupon, ordered that the *fiat* by default be stricken out. On appeal—*Held,* that the county court had no authority under the circumstances of this case to strike out the *fiat* entered on the *scire facias.*

The appearance of an attorney, without proof of an authority derived from a defendant, does not *per se* invalidate a judgment.

If loss be sustained thereby, the attorney must answer in a civil action by the party injured.

Where the county court strike out a judgment under the act of November 1787, *ch.* 9, *s.* 6, they are bound to order regular continuances of the cause, from the time of the rendition of the judgment to its being stricken out, to be entered on the docket, so that the matters in dispute may be fairly brought to trial—their failure to do this, works a discontinuance of the action.

Judgments at law are not lightly to be interfered with; and it must be a strong case to induce the court to strike out a judgment of almost eight years standing.

Appeal from *Prince-George's* County Court. On the 7th of May 1816, the plaintiff in that court, (now appellant,) sued forth a writ of *scire facias* on a judgment therein rendered at April term 1807, in favour of the plaintiff, against the defendant's intestate, for $600 damages, and $7 28 costs. It stated the death of the intestate, and that administration on his estate had been granted to the defendant, &c. The sheriff was commanded to give notice, &c. to the defendant, and at the return day he made return of the writ *nihil.* The record states that the defendant, as administratrix, voluntarily appeared in court, and a rule was laid on her to plead to the *scire facias,* and by

*Archibald Van-Horn*, her attorney, she prayed the court, and obtained leave to imparl until the next term of the court. At the next term, (April 1817,) she prayed and obtained further leave of the court to imparl until the next term, for the purpose of pleading to the *scire facias*. At which term, (September 1817,) the plaintiff appeared, but the defendant made default, and a *fiat* was entered against her by default, in the usual manner. On the 13th of April 1825, the defendant moved the court, then sitting, to strike out the judgment of *fiat* entered against her, and she filed in court her own affidavit, and that of *T. Tyler*. Her affidavit stated, "that in the fall of 1815, after taking letters of administration upon the estate of her deceased husband, and selling all his personal estate pursuant to an order of the orphans court of *Prince-George's* county, she removed to the District of *Columbia*, leaving the affairs of her administration to be settled by Major *Trueman Tyler*, and that she has continued to reside there ever since. That she never knew any thing of the issuing of any writs in the above suit, nor that *Archibald Van-Horn*, who she never employed as attorney in any case whatever, had appeared for her in the said suit, nor that any rule was laid upon her to employ new counsel in that suit, upon the death of the said *Van Horn* nor that any *fiat* had been entered against her in said suit, nor that any execution had been issued against her thereupon; but was entirely ignorant that any proceedings had been instituted in any court whatever against her in relation to the subject matter of that suit, until after suits had been instituted against her sureties in her administration bond. That she never did in any manner assent to or acquiesce in the said *fiat*, but on the contrary did immediately, upon receiving notice that the said *fiat* had been entered against her, unite with *Mackall S. Cox*, one of the said sureties, (against whom a judgment had been obtained for the amount of the said *fiat*, upon her said administration bond, and against whom an execution had been issued upon said judgment,) in a bill of complaint filed in the county court of *Prince-George's* county, as a court of equity, applying for an injunction to stay proceedings at law on the said judgment. And further, that she was induced to believe that nothing had been done in the said judgment or *fiat* by a letter

which she received from *J J. Donaldson*, who was the attorney who appeared for the plaintiff, and obtained the said *fiat.* Which letter she herewith exhibits." The letter referred to was dated *Baltimore*, the 20th of September 1817, stating that he had obtained three judgments against her husband in his lifetime, which he was assured by Mr. *Tyler* would be paid that summer. Being under that impression when he was at September court, he called on Mr. *Tyler* for settlement, who said he had no funds in hand, but expected them from her. That as it was absolutely necessary they should be immediately settled, he hoped she would not delay the promised arrangement, otherwise he must sue on her administration bond, and make her securities liable. The affidavit of *T. Tyler*, the agent of the defendant, stated that he gave notice to all the creditors of the deceased to present their claims, and that among those presented, and a proportion of which were paid, was the judgment, the *scire facias* in this case seems to revive against the defendant. That in the years 1816 and 1817, he had frequent conversations with *J J. Donaldson*, the plaintiff's attorney, in relation to the said judgment and payment thereof. That he always informed the said *Donaldson* that there would not be a sufficiency of assets in the hands of the administratrix to pay the whole of that judgment. Nothing was said in those conversations about any suit being instituted against the said administratrix. That he never knew or heard that the suit, by which the above was obtained against the administratrix, had been, or was intended to be instituted, until he was surprised on hearing, after the judgments had been obtained, that the defendant's administration bond had been sued, and judgments obtained thereon against her sureties. That he never knew that *A. Van-Horn*, esquire, had appeared for the administratrix in the said suit, nor that any rule had been laid upon her to employ new counsel.

The county court at the said term. (April 1825,) ordered that the *fiat* so as aforesaid rendered by default, be stricken out. From this order the plaintiff appealed to this court.

The cause was argued before BUCHANAN, Ch. J. and EARLE, ARCHER, and DORSEY, J.

*J. Johnson,* for the Appellant, contended, 1. That the *fiat* against the administratrix was evidence of assets, whether that *fiat* was by confession or default; and that it was immaterial whether the attorney, who suffered the default, was employed or not.

2. That if the *fiat* was not considered conclusive evidence of assets, it was too late to move to set it aside; or at all events, that it could only be set aside on payment of costs.

On the *first point,* he cited *Ruggles v Sherman,* 14 *Johns. Rep.* 446. *Rock v Leighton,* 1 *Salk.* 310. 3 *Bac. Ab.* tit. *Executors,* &c. (M) 88, *(note b.) Henck v Todhunter,* 7 *Harr. & Johns.* 275. *Denton v Noyes,* 6 *Johns. Rep.* 296.

On the *second point,* he cited *Thomas's Coke Litt.* 511, *(note* E.) 1 *Com. Dig. (new Ed.)* tit. *Amendment,* 603, *(note a.) Devenport v Ferris,* 6 *Johns. Rep.* 131. *Dand v Barnes,* 6 *Taunt.* 5, *(1 Serg. & Low.* 291.*) Fletcher v Wells,* 6 *Taunt.* 191. *(1 Serg. & Low.* 352.*) Philips v Hawley,* 6 *Johns. Rep.* 129.

*Ashton,* and *Magruder,* for the Appellee, cited 1 *Reeves' Hist. E. L.* 417. 2 *Reeves' Hist. E. L.* 71. *Co. Litt.* 259. *b. Rich. Pr.* 45. 1 *Arch. Pr.* 23, 25. 2 *Arch. Pr.* 8, 88. *Morrice v Green,* 3 *Salk.* 213. *Darnall v Harrison,* 1 *Harr. & Johns.* 137. *Ryland v Noakes,* 1 *Taunt.* 342 *Robison v Eaton,* 1 *T. R.* 62. Act of 1720, *ch.* 24. *Forsyth v Marriott,* 4 *Bos. & Pull.* 251; and the act of 1787, *ch.* 9, *s.* 6.

DORSEY, J. delivered the opinion of the court. The circumstances detailed in the depositions filed in this case, were not a sufficient warrant to the court below, to strike out the judgment against the appellee. The *scire facias* against *Fielder Dorsett's* administratrix was regularly issued, to which a voluntary appearance for the defendant, was entered by *Archibald Van Horn,* an attorney of *Prince-George's* county court, and a judgment by default was rendered against her by reason, as stated in the argument, of the death of *Van Horn* before the judgment term; and it is alleged, no rule was laid on the defendant to employ new counsel. The want of such a rule does not vitiate the judgment; the party has no legal right to demand it; its imposition is not the offspring of any mandate

of the law, but of the courtesy of the bar, which is encouraged by the court, as tending to subserve the purposes of justice. The appearance of an attorney, without proof of an authority derived from a defendant, does not *per se* invalidate a judgment. If loss or injury be sustained thereby, the attorney must answer it in a civil action by the party injured. The sufficiency of his estate to do so, was admitted in the argument of the case before us; and there is no insinuation of fraud or covin.

But conceding that the circumstances under which this judgment was rendered, afford an ample justification for its being stricken out, a conclusive objection, to its being done, is the statement in the affidavit of the appellee, that she had united in an application for an injunction, (and *ex necessitate rei* for relief,) to the *Prince-George's* county court, sitting as a court of equity, with *Mackall S: Cox,* one of the sureties in her administration bond, against whom a judgment and execution had been obtained, founded on the *fiat* and proceedings against her. Whether this proceeding in equity be still pending or finally determined against the complainants, does not appear. But in either event it is an insuperable barrier to the granting of that summary relief which she has successfully sought at the hands of the county court. The grievance complained of is one, against which the county court, on its equity bench, is competent, not to say peculiarly fitted, to relieve. The party has elected the tribunal from which she seeks redress; and there she should be left to obtain it, and not take two chances for relief—involving the appellant in a double series of litigation, and possibly obtaining, as it were, inconsistent and contradictory decisions upon the same subject.

Judgments at law are not lightly to be interfered with; and it must be a case infinitely stronger than the present to induce this court to sanction the striking out of a judgment of almost eight years standing, in virtue of which too, in due course of law, another judgment hath been obtained by confession, and execution levied thereunder.

This court do not concur with the suggestion, that the appeal must be dismissed, because the court below, (as is contended,) have given no final judgment in the cause. By ordering the judgment to be stricken out, and giving the plaintiff no

day in court, there is an end of the suit; and the parties in that proceeding have no further opportunity of litigating their rights. Even if the county court were right in striking out the judgment, (which we cannot admit,) they were bound to have ordered regular continuances of the cause to have been entered on the docket, so that the matters in dispute might have been brought fairly to trial, as directed by the act of 1787, *ch.* 9, *s.* 6. Their failure to do this works a discontinuance of the action, and thereby inflicts an injury on the plaintiff, to redress which this appeal properly lies.

But we must not be understood as predicating our reversal upon this reason; but upon the broad ground, that under the circumstances of this case, the county court were not authorised to strike out the judgment on the *scire facias;* and that the *fiat* must remain in full force, unless relief against it be granted in equity.

**ORDER REVERSED.**