## JOHN S. STANSBURY and Oliver F. Hack *v.* MARK KEADY.

### *Decided July. 1st, 1868.*

JUDGMENTS BY DEFAULT ; INQUISITION ; TIME FOR ENTERING UP. MOTION TO STRIKE OUT JUDGMENT ; TIME FOR MAKING.  REPLEVIN BOND ; ACTION ON ; AFTER DEFAULT ; DEFENSES.  APPEALS ; CONFINED TO OBJECTIONS MADE BELOW.

The Code of Pub. Gen. Laws (1860), Art. 75, sec. 62, as amended and re-enacted by the Act of 1864, ch. 175, contains no limitation as to the time within which inquisitions upon judgments by default must be taken.  (*a*)                              p. 367

And it applies as well to cases in which the default was entered before the passage of the Act, as to those which arose subsequent to its passage.                                                        p. 367

The Act, after requiring the jury to return their inquisition under their hands and seals, directs that "the court shall order such judgment to be extended in accordance with the terms of such finding by the jury." *Held:* (*b*)

That a rule of court, requiring motions in arrest of judgment to be made on or before the second day succeeding that upon which the verdict shall have been rendered, imposes no obligation upon the court to wait until the expiration of that time before entering up judgment upon the inquisition.                                          pp. 367-368

(*a*)  See the Code of Pub. Gen. Laws (1888), Art. 75, sec. 86.

(*b*)  See Code of Pub. Gen. Laws (1888), Art. 26, sec. 18.

**362**    *The court may delay, and always will, when satisfied there is any occasion for it, in entering up a judgment, so as to allow a motion in arrest, but that it *must* do so in all cases, has neither the sanction of law nor practice.                                            p. 368

In an action on a replevin bond, after judgment by default against the defendants, an inquisition was taken and judgment entered up thereon. On appeal from an order overruling a motion to strike out the judgment. *Held:*

That while the judgment stands unreversed, the Court of Appeals cannot go behind it to examine into and determine upon the validity of the replevin bond, which formed the cause of action upon which the suit was instituted.                                            p. 368

Nor can it take notice of the fact that no breaches of the bond were filed, or that the record in the replevin suit had not been pleaded.
                                                            pp. 368, 363

That the court was prohibited by the Act of 1861-2, ch. 154, from noticing the fact that the judgment was for an amount greater than the penalty named in the bond sued on—that objection not having been set forth in the court below as one of the grounds of the motion to strike out. (*c*)                                            p. 368

Appeal from the Court of Common Pleas.

On the 29th of May, 1861, the appellee brought suit against the appellants and one Michael Walsh, upon a replevin bond, laying his damages at $500. The penalty in the bond was $300. The writ was returnable to the September term, 1861, and was returned, summoned, as to the appellants; *non est,* as to Walsh. At the January term, 1862, judgment by default was entered against the appellants, and on the 16th of June, 1864, an inquisition was taken and the plaintiff's damages assessed at $367.50 and costs. On the same day final judgment was entered up for the amount so found by the jury. On the 17th of June, 1864, a motion to strike out the judgment on the inquisition and to set aside the inquisition, was filed by the appellants. The reasons assigned were:

1st. Surprise.

2nd. Because the inquisition should have been had and filed at the term during which the judgment by default was entered, or at the next term succeeding such entry.

**363**    *Subsequently, the following additional reasons were filed:

1st. Because the judgment upon said inquisition was pro-

---

(*c*)   See Code of Pub. Gen. Laws, Art. 5, sec. 9.

nounced by the court upon the same day on which the inquisition was rendered, which said action of the court deprived the defendants' counsel of his right under the 41st rule of this court, which rule is as follows: "Every motion in arrest of judgment, or for a new trial, shall be made before the rising of the court, on or before the second day succeeding that upon which the verdict shall have been rendered."

2nd. Because the plaintiff has no sufficient cause of action.

3rd. Because no breaches of the condition of the bond were filed.

4th. Because the record in the replevin suit was not pleaded.

The court below (King, J.,) overruled this motion, and from this ruling the present appeal was taken.

The cause was argued before Stewart, Brent, Miller and Robinson, JJ.

*James A. L. McClure,* for the appellants:

The bond was in the penal sum of *three hundred dollars.* And the judgment by default was rendered on the 15th of January, 1862, for $500, damages in *narr.* and costs; to be released on the payment of $367.50, the sum assessed by the jury of inquisition, with interest from the 16th of June, 1864, and costs. The judgment, therefore, was for a greater amount than the penal bond. *Could it be so entered under the law?* There is no decision directly on this point, so far as we have been able to ascertain, by the Court of Appeals of Maryland. But the English decisions, after some contrariety at first, have, at last, settled the law for that country, by declaring that the judgment cannot go beyond the penalty of the bond. *White v. Sealy,* 1 Doug. 49; *Lonsdale v. Church,* 2 Term, 388; *Wilde v. Clarkson,* 6 Term, 303. And the Supreme Court of the United States has also so interpreted the law for this country. *McGill v. Bank,* 12 Wheat. 511; *Farrar v. United* **364** *States,* 5 Pet. 373; *Leggett v. Humphreys,* 21 How. 66.

The inquisition was not taken in proper time, under the law. Sec. 62 of Art. 75, Code of Pub. Gen. Laws, was but a re-enactment of the Act of 1794, ch. 46, (which had been "passed to remedy the inconveniences existing in the execution of writs of inquiry before the Sheriff," *Hopewell v. Price,* 2 H. & G.

275), and required the court, on motion of the plaintiff, or his attorney, where an interlocutory judgment had been given, "to charge the jury attending at the same, or at the next term, to inquire of the damages and costs sustained by the plaintiff in such action." The interlocutory judgment, in this case, was rendered on the 15th of January, 1862, and the jury were not charged to inquire of the damages, etc., until the 16th of June, 1864—many terms after the entry of the said interlocutory judgment—and too late, to thus make the final judgment effective.

The Act of February 23rd, 1864, ch. 175, which is prospective in its operation, in amending said sec. 62 of the Code, leaves out the words "attending at the same, or at the next term," and inserts, in lieu thereof, the words, " in attendance in such court," and, as it should be interpreted, within a *reasonable time.*

The judgment on the inquisition was entered, in the court below, on the very day on which the inquisition was filed, to wit: the 16th of June, 1864. And on the 17th of June, 1864, one day thereafter, the counsel for the defendants filed his motion to " strike out the judgment upon the inquisition " for, among others, the reasons filed with his motion. He was driven to this motion *to strike out,* because *the judgment had already been entered,* and a motion *in arrest* thereof would have been anomalous. But he claimed, and still claims, his motion to have been in the nature of a "motion in arrest," and to have all the properties, under the circumstances of such a motion— **365** prominent among which, is the opening of the *whole record for judicial inspection. *Charlotte Hall School v. Greenwell,* 4 G. & J. 407, etc.

If it be not allowed this effect, then the court violated its own 41st rule, as set out in the record, and thus deprived the defendants of an essential right, and should have, therefore, its judgment reversed. Evans' Pr. 435—"Final Judgments."

*John P. Poe* and *P. M'Laughlin,* for the appellee:

This case is wholly free from difficulty. The application of the defendants is not grounded upon any affidavit of merits. There is nothing whatever to show that the claim of the plaintiff was not perfectly just; that his judgment by default was

not regularly entered; that the verdict of the jury was erroneous or excessive; or that there was, in short, any fraud, deceit, surprise, mistake, or irregularity in any of the proceedings.

Now what are the reasons assigned here?

1st. *Surprise.* The defendants were regularly summoned; they appeared by counsel, one of them being himself an experienced and vigilant practitioner; they put in no plea; a judgment by default is entered against them in January, 1862; they are aware of it in May, 1862. Instead of then applying to the court to strike it out without delay, which would have prevented any further proceedings without their knowledge and consent; they give no thought and take no care of the case for more than two years, and when the plaintiff then proves his case and obtains a final judgment, they come forward and allege surprise.

The mere statement of such a ground for setting aside a judgment, complete and regular in every particular, is its best refutation. All the other five reasons, in the original as well as amended motion, are purely technical, and entitled to no favor unless clearly and indisputably sufficient. In fact, not one of them is tenable. To all of them, *Green v. Hamilton,* 16 Md. 317, is a complete and conclusive answer. *That **366** case, and the one in hand, resemble each other in many respects, and the reasoning and conclusions of the court are especially applicable here. *Mailhouse v. Inloes,* 18 Md. 333; *Kemp v. Cook,* 18 Md. 130; Act of 1864, ch. 175.

If it could be conceded that the declaration states the plaintiff's cause of action imperfectly, still such defect, if any, is cured by the verdict. *Merrick v. Bank of Metropolis,* 8 Gill, 64.

And here the appellants insist that the verdict was for an amount larger than the penalty in the bond, and therefore cannot stand. To this it might be sufficient reply, to say that the record does not show the objection to have been made below, and it cannot, therefore, be noticed here. But waiving this; is there any force in it ? The bond was for $300; its condition was broken, at the latest, by June, 1856. The appellant's liability for its full amount then attached. The verdict was rendered in June, 1864, eight years afterwards, for $367.50. How

that precise sum was obtained does not appear, but most prob-
ably by the allowance of interest. This allowance it was com-
petent for the jury to make. The form of the verdict, under
our practice, was perfectly correct.

Brent, J., delivered the opinion of the court.

This appeal is taken from an order of the Court of Common
Pleas of Baltimore City, overruling a motion made by the de-
fendants, the present appellants, to strike out the judgment
upon an inquisition, and to set the inquisition aside.

The reasons assigned in support of the motion are six in
number, and are as follows: 1st. Surprise. 2nd. Because the
inquisition should have been had and filed at the term during
which the judgment by default was entered, or at the next
term succeeding such entry. 3rd. Because the judgment on
the inquisition was pronounced on the same day on which
the inquisition was rendered. 4th. Because the plaintiff had
no sufficient cause of action. 5th. Because no breaches of the
**367** *bond were filed; and 6th. Because the record in the
replevin suit was not pleaded.

We think the case is wholly free from difficulty, and the
questions presented may be disposed of very briefly.

There is nothing in the record to show that any surprise
had been practiced upon the defendants, and we may infer
that this ground has been abandoned by them, as the brief and
argument, filed in their behalf, is entirely silent upon the
point.

The objection, that the inquisition was not taken in proper
time, is based upon Art. 75, sec. 62, of the Code. There
might be some force in the objection if that section had not
been amended and re-enacted by the Act of 1864, ch. 175.
That Act was passed on the 23rd of February, 1864, and took
effect from the time of its passage. Its provisions apply, there-
fore, to the inquisition, which was taken and filed in this case
on the 16th day of June following. From it are entirely omit-
ted the words of the former law, which, it is claimed, restrict
the time of taking an inquisition, either to the term at which
the judgment by default was entered, or to the term next suc-
ceeding. We do not perceive any limitation as to time in this

law, and think there is none, which invalidates the present inquisition. Nor does it make any difference that the judgment by default was rendered before its passage. It embraces by its terms all cases in which a " judgment by default *has been,* or shall hereafter be entered."

The next objection is equally groundless. The Act just referred to, after requiring the jury to return their inquisition under their hands and seals, directs that " the court shall order such judgment to be extended in accordance with the terms of such finding by the jury." If there is any obligation upon the court to delay in making such extension, it must be found outside of the Act. It is contended that the 41st rule of the court, requiring a motion in arrest of judgment to be made on or before the second day succeeding that upon which the verdict shall have been rendered, imposes this *obligation. **368** We do not so understand it, and would not be justified in giving to it such a construction. The court may delay, and always will, when satisfied there is any occasion for it, in entering a judgment so as to allow a motion in arrest, but that it *must* do so in all cases, has neither the sanction of law nor practice.

The judgment by default in this case is a binding and effective one. It stands unreversed and is not before us for review upon this appeal. We cannot go behind it to examine into and determine upon the validity of the replevin bond, which forms the cause of action upon which the suit is instituted. As said in *Green v. Hamilton,* 16 Md. 329, and reiterated in *Mailhouse v. Inloes,* 18 Md. 333, " a judgment by default if regularly entered, (and to this one there is no objection,) is as binding as any other, as far as respects the power and jurisdiction of the court, in declaring that the plaintiff is entitled to recover."

The fifth and sixth objections, even if there existed in fact and in law any foundation for them, are disposed of by what has been said of the preceding one.

The appellants have also urged, that the damages assessed by the jury exceed the penalty in the bond, and that the inquisition cannot therefore stand. How this excess was obtained, and for what it was given by the jury, we are not informed, but it has been treated in the argument as an allowance of so much interest. This question does not appear from the record

to have been raised and decided in the court below, and we are prohibited, by the Act of 1861-2, ch. 154, from giving any decision upon it. That law provides that " the Court of Appeals shall in no case decide any point or question which does not appear by the record to have been tried and decided by the court below."

The appellants have contended that the motion, which is the subject of this appeal, should be regarded in the nature of a motion for an arrest of judgment, while the appellee contends that we should regard it in the nature of a motion for a **369** *new trial. We do not view it in either light. It is a motion to strike out a judgment and to set aside the inquisition upon which the judgment was entered, and we have treated it as such. Unlike a motion in arrest of judgment, it does not open the whole record of the case, and unlike a motion for a new trial, the judgment upon it of the court below, is the subject of an appeal.

As we find no error in the judgment of the court below, it will be affirmed. *Judgment affirmed.*