## SUBURBAN PROPERTIES MANAGEMENT, INC. *v.* JOHNSON

[No. 38, September Term, 1964.]

456

*Decided November 11, 1964.*

The cause was argued before HENDERSON, C. J., and PRESCOTT, MARBURY, SYBERT and OPPENHEIMER, JJ.

*James F. FitzGerald*, with whom were *FitzGerald, Holmes & Ritter* on the brief, for appellant.

*Calvin R. Sanders,* with whom were *Dunphy & Sanders* on the brief, for appellee.

MARBURY, J., delivered the opinion of the Court.

Walter S. Johnson, appellee, on March 22, 1961, contracted through the appellant, Suburban Properties Management, Inc., a real estate agency, for the purchase of two lots of ground in Montgomery County from Louis W. Dickerson and wife, at a purchase price of $11,000. Appellee was a general contractor engaged in the purchase of building lots, and the construction of new homes thereon for sale to the general public. The contract provided that the sale was contingent upon the two lots receiving percolation tests satisfactory to the purchaser and at his expense. Thereafter, appellee employed Lester Holston, an expert, to conduct the tests; and he reported to the appellee that the tests were satisfactory. After receiving this information, appellee notified the seller and appellant that he was prepared to settle for the lots. Settlement was made on May 12, 1961, between the buyer (appellee), sellers, and the agency (appellant), when appellee paid $1,000 in cash to the sellers, executed a $1,000 confessed judgment note to appellant as a part of the purchase price for commission due by the sellers to appellant, and further executed, with his wife, a deed of trust and

note secured thereby for $9,000 payable to the sellers, thus comprising the $11,000 purchase price for the two lots. The deed for the property was executed and delivered by the sellers to the purchasers, and on June 9, 1961, the title papers were recorded.

Some time subsequent to the settlement and recording, appellee was advised that the earlier report made to him concerning the percolation tests was in error and that later tests made were unsatisfactory. Appellee made further tests in July and August 1961 which also resulted in negative reports. As a result, Montgomery County would not issue building permits for the two lots. Thus, dwellings could not be erected thereon, and the lots were of little value to the appellee. On October 31, 1961, appellant gave appellee notice that his confessed judgment note was overdue. On November 21, 1961, appellant received a letter from appellee's attorney advising it of the unsatisfactory percolation tests and the pending rescission of the contract, suggesting that the appellant hold the note until the matter was resolved. Later appellee began negotiations with the sellers and on April 16, 1962, the parties entered into an agreement to reconvey the two lots to the sellers, who in turn were to release the deed of trust, cancel the note secured thereby, and the sellers were to keep the original $1,000 cash payment. The appellant was not a party to the agreement and was not included in the negotiations between the Johnsons and the Dickersons. However, the concluding paragraph of the agreement significantly provided that:

> "* * * each of the parties hereto expressly release and forever discharge the other party from any further liability arising out of or under said contract of sale and conveyance; and Walter S. Johnson and Ruth A. Johnson, his wife, warrant and agree to indemnify and save harmless Louis W. Dickerson and Sadie E. Dickerson, his wife, their heirs and assigns, against any claim by any person whomsoever arising out of or under said contract and conveyance and/or this agreement and reconveyance, including, but not limited to, any claim by the broker for sales commission under said contract."

Thereafter, on May 8, 1962, appellant filed its declaration, affidavit, and the confessed judgment note containing authority to confess and assent to entry of judgment. Judgment was entered on the same day for the sum of $1,000, with interest from May 8, 1962, $12.15 costs, plus an attorney's fee of $100. Summons was issued on May 8 and was served on the appellee by the sheriff on May 16. On June 26, 1962, the appellee filed a motion to set aside the judgment on the ground that there was a failure of consideration. On September 14 the appellee sought leave to withdraw this motion, which was granted by Judge Pugh. Appellee, on November 27, 1962, filed a second motion to set aside the judgment on the ground that it was obtained by fraud. On December 6, 1962, appellant's opposition to this motion was filed, and on February 8, 1963, Judge Shook ruled that the case was to be heard on the allegation of fraud before a decision to set aside the judgment. On October 2, 1963, a hearing on appellee's motion to set aside judgment was held before Judge Anderson, who, on December 17, 1963, signed an order stating that: "Based upon all principles of equity and justice, it is the Court's opinion that the motion to set the judgment aside should be granted." The order set aside the judgment and provided that the case be placed on the trial docket, with fifteen days leave granted the defendant to plead to the plaintiff's declaration. The record before us discloses no opinion, either written or oral, by Judge Anderson, but it is significant that the order setting aside the judgment contained no finding of fraud, mistake or irregularity. It is from this order that the appeal is taken.

Before us the appellant contends (a) that the trial court, after a judgment by confession has been entered for a period of time in excess of thirty days, had no power to strike nor set aside the judgment in the absence of a showing or finding of the existence of fraud, mistake or irregularity, and (b) that there was no evidence presented to the court at the hearing on the motion which would permit it to strike a final judgment for fraud.

The appellee's first motion to set aside the judgment on the ground of failure of consideration was filed forty-one days after the date of service by the sheriff, or eleven days after the

judgment was final. This motion was withdrawn by him on September 14, 1962, by permission of Judge Pugh. Thereafter, on November 27, 1962, he filed his second motion to set aside the judgment on the ground of fraud. This was over four months after the judgment was final. Maryland Rule 645 b concerning judgment by confession states:

"* * * Any application made by the defendant with respect to the judgment within thirty days from the service of the summons shall be promptly heard by the court, and such action taken as justice may require. If the judgment is opened or set aside, the case shall stand for trial in accordance with the rules of the court. If no cause is shown in pursuance of the summons, the judgment shall be deemed to be *final,* to the same extent as a judgment entered after trial, but may be set aside or modified pursuant to Rule 625." (Emphasis added.)

Rule 625 provides that after the expiration of thirty days from the entry of a judgment, "* * * the court shall have revisory power and control over such judgment, *only* in case of fraud, mistake or irregularity." (Emphasis added.) *Mason v. Central Oil Burner,* 227 Md. 380, 177 A. 2d 415. The rules establish a period of time within which a reasonably diligent person can act for the purpose of causing a judgment to be set aside. They specifically provide that after the expiration of the thirty day period, within which the discretionary power to revise and control a judgment may be exercised, the trial court shall set aside the enrolled judgment only in the case of fraud, mistake or irregularity. *Eliason v. Comm'r of Personnel,* 230 Md. 56, 185 A. 2d 390; *Tasea Investment Corp. v. Dale,* 222 Md. 474, 160 A. 2d 920. Furthermore, after the lapse of the thirty day period prescribed by the rule, the power of the court to revise and control such judgment is no longer discretionary. When the judgment became enrolled the appellant acquired a substantial right in the judgment of which it could not be validly deprived except upon a showing of fraud, mistake or irregularity. *Gay Investment Co. v. Angster,* 231 Md. 318, 190 A. 2d 95; *Williams v. Snyder, Adm'r,* 221 Md. 262, 155 A. 2d 904. It is apparent

that in this case the trial court had no power to set aside the judgment in the absence of a showing of fraud, mistake or irregularity.

It is the contention of the appellee that the contract was contingent upon satisfactory percolation tests of the property and since the property did not meet the tests and was reconveyed to the sellers, no money was due and owing the appellant by the appellee; and that it was fraud not only upon the appellee but upon the court to enter a judgment upon the note.

The elements of legal fraud are: (1) that a representation made by a party was false; (2) that either its falsity was known to that party or the misrepresentation was made with such reckless indifference to truth to impute knowledge to him; (3) that the misrepresentation was made for the purpose of defrauding some other person; (4) that that person not only relied upon the misrepresentation but had the right to rely upon it with full belief of its truth, and that he would not have done the thing from which damage resulted if it had not been made; and (5) that that person suffered damage directly resulting from the misrepresentation. *Appel v. Hupfield,* 198 Md. 374, 84 A. 2d 94; *Gittings v. Von Dorn,* 136 Md. 10, 109 Atl. 553.

Our search of the record before us fails to show that appellee has produced any evidence of legal fraud by the appellant. In fact appellant was not notified by appellee that the lots would not percolate until November 1961, nearly a month after the note became overdue. The percolation tests were erroneously completed by appellee's agent. Later when it was found that the lots would not pass the tests appellee and sellers entered into an agreement to reconvey the lots, and appellant was never consulted. As indicated above the agreement and release executed by the Johnsons and the Dickersons apparently recognized the appellant's claim in the form of the note, because Johnson and his wife agreed to indemnify and save harmless the Dickersons against any claim by any person whomsoever arising under the contract and conveyance, including, but not limited to, any claim by the broker for sales commission under said contract. Clearly, under these circumstances, there could be no fraud on the part of the appellant in asserting its claim against the appellee for recovery on the note. Certainly the mere filing

of a proceeding by one claiming relief against another which may ultimately not prevail, could not be considered fraud in a legal sense, either upon the party against whom relief is sought, or upon the court in which the proceeding was instituted.

As pointed out above, the rules of court amply provide opportunity for a timely remedy to a defendant in a confessed judgment proceeding. Here the appellee not only was tardy in filing his first motion to vacate the judgment on the ground of failure of consideration (which he later withdrew), but failed to show any basis for setting aside the judgment on the ground of fraud, which he alleged in his second motion to set aside the judgment filed more than four months after the judgment had become final.

*Order reversed, with costs.*