# TEMPLE HILL BAPTIST CHURCH, INC. *v.* DODSON

[No. 72, September Term, 1970.]

*Decided November 12, 1970.*

*Motion for rehearing filed December 14, 1970; denied December 15, 1970.*

516

The cause was argued before HAMMOND, C. J., and BARNES, FINAN, SINGLEY and DIGGES, JJ.

*Douglas R. Taylor* for appellant.

*Joseph A. Mattingly* for appellee.

BARNES, J., delivered the opinion of the Court.

This is the third appeal to this Court in this matter since 1967. Each of the appeals has stemmed from the attempts of Philip F. Dodson (Dodson), an attorney, to collect a judgment obtained against Doctor William B. Adams (Adams), pastor and one of the trustees of Temple Hill Baptist Church, Inc. (the Church) in *Adams v. Dodson,* 106 A. 2d 501 (D. C. 1954). Dodson represented Adams in a dispute with the United States Government and recovered $9,552 for Adams. The District of Columbia judgment of $1,611.82 for Dodson's attorney's fee in that dispute was converted into a Maryland judgment by the Circuit Court for Montgomery County on February 24, 1956.

In order to collect the judgment Dodson brought an attachment action against the Church as garnishee. The Church filed a plea of *nulla bona.* The circuit court directed a verdict in favor of the Church on the issue of whether it possessed assets subject to claim by Adams and entered a judgment for costs against Dodson. It was at this point that the first appeal in this matter arose, as Dodson challenged the directed verdict. Adams had testified at the hearing that the money he had obtained from the government by the efforts of Dodson had been "put into the work of the Church and went into the treasury or perhaps I bought something separate for the Church." There was also some evidence that the Church owed Adams some back salary although Adams testified

that the Church owed him nothing. This Court reversed the judgment and remanded the case to the circuit court for a new trial, "costs to abide the results below." We issued the mandate forthwith upon the petition of Dodson who was apprehensive that the Maryland judgment would become barred by the twelve-year statute of limitations, Code (Repl. Vol. 1968), Art. 57, § 3, unless he obtained a judgment of *fiat* thus renewing the twelve-year limitations period prior to its expiration on February 24, 1968.

Dodson then had a writ of *scire facias* issued upon the original judgment on August 23, 1967. This became Law No. 22395 in the Circuit Court for Montgomery County. Adams failed to make any response to the writ which was properly served upon him by the sheriff on August 27, 1967, and returned on August 30, 1967. On February 13, 1968, Dodson filed a petition reciting due service upon Adams, his failure to plead, attached a military affidavit and prayed for a judgment of *fiat*. On February 16, 1968, Dodson obtained the judgment of *fiat*, Law No. 23634, for $1,611.82 with interest from February 24, 1956, plus $682.86 and $72.65 costs. On February 19, 1968, Dodson issued an attachment on this judgment which became Law No. 23634. The attachment was served by the sheriff on February 28, 1968, and his return was as follows:

> "Attached and laid in the hands of Temple Hill Baptist Church, Inc., Garnishee and Garnishee Summoned by service on William B. Adams, Pastor, this 28th day of February, 1968.
>
> /s/ Ralph W. Offutt,
> Sheriff"

On April 23, 1968, Dodson filed a motion for judgment by default against the Church pursuant to Maryland Rules F2 and 648 reciting that more than 15 days had elapsed since the return day—the first Monday in April (April 1, 1968) and that neither the defendant Adams nor the garnishee Church had filed a pleading in the case. On April 30, 1968, Judge Shook entered a judgment by default against the garnishee Church.

On May 2, 1968, Dodson filed a motion for judgment of condemnation absolute against the garnishee Church. A hearing date was set by Judge Shook on June 26, 1968. On August 9, 1968, a hearing was held in open court before Judge Shearin. Neither the defendants nor their attorney appeared. There is a docket entry on August 9, 1968, stating: "No appearances or plea by Defendants although service was made." The trial court thereafter on the same day directed the entry of judgment absolute against the garnishee Church for $2,337.33 with interest from February 24, 1956. This judgment absolute was duly entered with costs.

On October 10, 1968, the garnishee Church moved to set aside the judgment absolute and to quash the attachment, submitting points and authorities as well as a supporting affidavit of Adams. In the affidavit, it is stated by Adams that he is pastor of the Church, the garnishee named in Law No. 23634, and is duly authorized to make the affidavit on behalf of the Church. He stated that the default in this case was not willful, and that the service was actually made upon Adams individually, there being nothing in the "warrant or service to notify the church or to notify. . .Adams that he received service in his capacity as Trustee for the church rather than as the individual judgment debtor." It was for this reason that the Church made no appearance in the case. There is no record of any service upon or notice to any other officer or trustee of the Church other than the judgment debtor himself, Adams. Because of the proceedings in the first appeal to this Court, which resulted in the awarding of a new trial, Adams avers that he did not understand that a new action by the same plaintiff in the same cause of action to attach the property of the Church would lie and, therefore, did not understand that an appearance by the Church was required by the attachment laid in the hands of Adams individually on February 20, 1968. He also stated in the affidavit that the inclusion of $405.36 for the costs of the first appeal in the costs included in the judgment absolute before a new trial was held was "un-

timely, irregular, and in violation of the order of the Court of Appeals."

On October 15, 1968, Judge Shook, without a hearing, struck out the judgment of condemnation absolute and quashed the attachment in Law No. 23634. Dodson on October 22, 1968, filed a motion to strike out Judge Shook's order of October 15, alleging that the judgment absolute had been enrolled and further that such an order could only be granted after a hearing. The Church filed an opposition to Dodson's motion to strike. Upon Dodson's petition, Judge Levine passed an order on October 25, 1968, requiring the Church to show cause why the relief prayed for in the motion of October 22 should not be granted and setting the matter for a hearing on November 8. After that hearing, Judge Levine struck out the order of October 15.

On November 21, 1968, Judge Levine granted the Church's motion of November 19, 1968, and ordered a stay of proceedings to advertise and sell the property of the Church until a hearing could be held upon its motion, filed October 10, 1968, to set aside the judgment of condemnation absolute and to quash the attachment issued by Dodson on his enrolled default judgment. The second appeal in this matter came about at this point as Dodson challenged this staying order of November 21, 1968. See *Dodson v. Temple Hill Baptist Church*, 254 Md. 541, 255 A. 2d 73 (1969). This Court affirmed the order filed November 21, 1968, granting the stay and required Dodson to pay the costs of the second appeal. It was not found necessary to pass upon the question of the finality of the order and consequent right to appeal as the Court was of the opinion that the motion was within the sound discretion of the trial court and no abuse of that discretion was either alleged or proved.

The hearing on the Church's motion to set aside the judgment of August 9, 1968, and quash the attachment was held on December 16, 1969, before Judge Levine.

At the hearing, Adams testified that he was pastor of the Church and was also a trustee on the Board of Trust-

ees of the Church. He did not send the writ of attachment served on him because he thought it was intended for him personally and not for the Church. He expected his counsel to get in touch with him as he had done theretofore. He admitted, however, on cross-examination that in two earlier attachment matters he had taken the papers to his counsel after service.

During the course of the hearing, Judge Levine asked counsel for Adams:

"THE COURT: Mr. Taylor, let me once again put the question to you that I did earlier. Is there any contention that Doctor Adams was not a proper person whom service could be made upon?

"MR. TAYLOR: Your Honor, I think he would be the proper person because he is a trustee. I assume as a trustee he is an officer of the corporation and I assume that the general rules of corporation law would apply, also to religious corporations. We are not contending that service on Doctor Adams would not have been proper had it been designated. The contention that we are making that service was improper because there was not sufficient designation, a third party to the dispute between Philip Dodson and William B. Adams, the only purpose of my eliciting these answers to indicate there would be other people who could have been served if the Plaintiff chose to do so."

At the conclusion of the hearing Judge Levine rendered an oral opinion from the bench. He was of the opinion that the item of $405.00,[1] costs of the appellant Dodson in the first appeal should not have been included in the item of $652.82 costs which were part of the judgment of condemnation absolute in that this item was to abide the

---

1. The exact amount of these costs was $405.36 rather than an even $405.00 but this slight difference in amount is obviously *de minimis*.

result of the new trial awarded in the first appeal which trial had never been held. Judge Levine concluded that, in view of the provisions of Maryland Rule 625 requiring a showing that a party moving to set aside an enrolled judgment must show fraud, mistake or irregularity and that he must have a meritorious defense and have acted with ordinary diligence, he would not set aside the judgment of condemnation absolute as reduced by the $405.00, because Adams had not acted with ordinary diligence. He accordingly on December 16, 1969, overruled the Church's motion to set aside the judgment of condemnation absolute, as reduced by $405.00 and to quash the attachment. The costs included in the judgment of condemnation absolute were reduced from $652.86 to $247.86 and the judgment was reduced from $2,337.33 to $1,932.33. The Church now challenges this December 16 order of Judge Levine thus giving rise to the third and current appeal in this matter.

### (1)

In regard to the deduction of the $405.00 item from the judgment of condemnation absolute, Dodson, the appellee, contended before us that this action by the lower court was in error and that we should restore that amount to the judgment of condemnation absolute. We do not find it necessary to pass upon this contention inasmuch as Dodson took no cross-appeal and the issue is not before us for decision. See *Glen Alden Corp. v. Duvall*, 240 Md. 405, 421, 215 A. 2d 155, 167 (1965), and prior Maryland cases cited in that opinion.

### (2)

Maryland Rule 625 provides:

> "For a period of thirty days after the entry of a judgment, or thereafter pursuant to motion filed within such period, the court shall have revisory power and control over such judgment. After the expiration of such period the court shall have revisory power and control over such

522

judgment, only in case of fraud, mistake or irregularity."

In summarizing the Maryland law in regard to a motion to strike out an enrolled judgment under this rule, Judge Horney, for the Court, aptly stated in *Tasea Investment Corp. v. Dale,* 222 Md. 474, 478, 479, 160 A. 2d 920, 923 (1960) :

> "In the cases, the grounds upon which final judgments have been set aside after enrollment are stated to be fraud, deceit, mistake, surprise and irregularity. In the present rule, as consolidated and simplified, the only grounds specified are fraud, mistake and irregularity; deceit and surprise having been eliminated. But in all such cases, the court, in addition to requiring the party who moves to set aside an enrolled judgment to show by satisfactory proof that he is acting in good faith, with ordinary diligence, and that he has a meritorious defense or cause of action, as the case may be, should also require a showing of such facts and circumstances as will certainly establish the fraud, mistake or irregularity allegedly resorted to in obtaining the judgment sought to be vacated." (Citing a number of prior Maryland cases)

The entry of a judgment by default, pursuant to Maryland Rule 310 b by the plaintiff without giving the defendant notice does not constitute an "irregularity" within the meaning of Maryland Rule 625. *Berwyn Fuel & Feed Co. v. Kolb,* 249 Md. 475, 240 A. 2d 239 (1968). See also *Grantham v. Board of County Commissioners for Prince George's Co.,* 251 Md. 28, 246 A. 2d 548 (1968). In both *Berwyn Fuel* and *Grantham,* we cited *Tasea Investment Corp. v. Dale, supra,* with approval and followed it.

In reaching his decision on this aspect of the case, Judge Levine stated in his oral opinion :

"It seems to me that considering this as well as the language of the Writ that the Church, acting through its authorized agent, failed to exhibit the kind of diligence required of it by construction of Rule 625. In this connection it is important to note that exactly two months elapsed from the time that service was made before the default, the initial default, was taken.

"More than five months before the judgment of condemnation absolute was entered and during none of that period did the Church acting as it always must do through its agent, examine the court record or make any inquiry as to the status of these proceedings. Moreover, if one reads the Writ, especially one who has had occasion to be served under identical circumstances, with two Writs previously, it should be apparent that William B. Adams is referred to in the third person and not in the familiar.

"So that it could reasonably be understood that the demand of the Writ was being directed to someone other than William Adams. It seems to me, to the Court, to be no basis for complaint, because Reverend Adams was wearing at least two hats; that this redounds to the advantage of the garnishee. First, because the Church was not unaware, at least the trustees of this extensive proceeding at the time that it permitted Reverend Adams to be one of its agents for process on February 28, 1968. Of course, Reverend Adams in addition to being a trustee by his capacity of pastor, is automatically, as I recall, in corporation law an officer that is a member of the corporate body. And as long as he holds the position of pastor, he is not even required to be elected independently as a trustee here."

\* \* \*

"[T]he mistake by Reverend Adams is not the kind of mistake that Rule 625 contemplates. It

was not a mistake which he was entitled to make; that is, it was not a mistake as the basis for setting aside the judgment.

"And surely there is no showing of any fraud as the kind required to come within the ambit of [Rule] 625, nor is there any irregularity. When Judge Shearin entered judgment of condemnation absolute in August of 1968, he did exactly what he intended to do. And as I have said, at the risk of being repetitious, this was not a defective service in the first instance and there was nothing irregular about the nature of the language of the Writ of Attachment or the fact that it did not say that it was particularly addressed to the Church.

"In all events, there was sufficient [information] contained in the Writ of Attachment to put the Church, acting through its duly authorized agent, [on notice] to make inquiry. This is specially the case here where he had received two such previous papers in the past and had done what he was required to do.

"The Court has failed to hear any acceptable explanation of why he did not understand what he was required to do in March of 1968, when he had known what the proper course was on the two prior occasions. So that for all these reasons, the Court does not find here [grounds] mount[ing] up to fraud or mistake and irregularity within the meaning of Rule 625."

Upon the facts already stated and the applicable law, we do not believe that Judge Levine was in error in his conclusion.

We might add that in view of the admission of counsel for Adams that he was a proper person to be served (even though the Church contended that this was an improper designation), no constitutional issue of due process is properly raised in the present case as service upon the

pastor of a religious corporation, who is also a trustee of that corporation, is a method of service calculated to give notice to the corporation. See *Light of Truth Spiritualist Church of Tulsa v. Davis*, 198 Okla. 694, 181 P. 2d 969 (1947) ; *Board of Trustees of Full Gospel Temple v. City of Oklahoma*, 196 Okla. 491, 166 P. 2d 91 (1940) ; *Elliott v. Greer Presbyterian Church*, 181 S. C. 84, 186 S. E. 651 (1936) ; *Zani v. Phandor Co.*, 281 Mass. 139, 183 N. E. 500 (1932).

The Church cites *Alexandria National Bank v. Cairo Hotel*, 184 A. 2d 202 (1962), and *Encyclopaedia Britannica, Inc. v. Shannon*, 133 F. 2d 397 (1943), in support of its contention that service of process upon Adams as agent of the garnishee corporation was inadequate because Adams was also the judgment debtor thus setting up a natural conflict between Adams and the corporation. It has been held that this foreseeably impedes relay of notice between the agent and corporation and that such notice falls short of constitutional requirements even though it formally falls within the letter of the statute. This case is clearly distinguishable in that no real conflict existed between Adams and the Church as Adams, himself, disclaimed the existence of any obligation on the part of the Church inuring to his benefit. This lack of conflict is all the more clearly evidenced by Adams' efforts in behalf of the Church to have the default judgment and attachment against it quashed. It was stated in *Encyclopaedia Britannica, Inc. v. Shannon, supra,* at page 398, that "if such service is so made to conceal rather than give notice, then the very purpose of the statute is defeated." Such was clearly not the case in this instance.

> *Order of December 16, 1969,*
> *affirmed, the appellant to*
> *pay the costs.*