ELLA C. CAPOBIANCO ET VIR *v.* CORAL GORDON

[No. 283, September Term, 1973.]

*Decided January 7, 1974.*

---

2. Judge Learned Hand, *Proceedings In Memory Of Mr. Justice Brandeis,* 317 U. S. XI. (1942).

The cause was argued before THOMPSON, DAVIDSON and LOWE, JJ.

*Frank J. Blair* and *John Brockenbrough Fox* for appellants.

*William A. Hegarty* for appellee.

LOWE, J., delivered the opinion of the Court. DAVIDSON, J., concurs with the result at page 672 *infra*.

This matter originated with the filing of a medical malpractice action on September 29th, 1972. The appellee (defendant below) was summoned on October 3rd, 1972, and by virtue of Md. Rule 307 was required to plead to the declaration on or before November 21st, 1972. No plea was filed by or on behalf of appellee.

Appellant (plaintiff below) filed a motion for judgment by default on December 12th, 1972. Judgment was entered as prayed on that date by Judge Lester L. Barrett of the Circuit Court of Baltimore County.

On March 12th, 1973, appellee received a notice of a hearing set for June 15th, 1973, as a result of the judgment by default. One month later appellee filed a special plea of limitations and a general issue plea. In addition she filed a motion to set aside the judgment by default.

The motion asserted that her failure to answer was not willful and that suit papers were forwarded promptly to an insurance company, which appellee believed to be her insurer. She was subsequently advised by that company that the alleged malpractice occurred at a time during which she was not covered by insurance. She was further advised by the company of the imminent return day and admonished to act promptly.

The appellee asserted that she had also notified the Medical and Chirurgical Faculty by forwarding them a copy of the suit papers. She received a letter from the attorney for the Medical and Chirurgical Faculty of Maryland dated November 3rd, 1972, which read as follows:

"November 3, 1972

Coral Gordon, M.D.
611 Park Avenue
Baltimore, Maryland    21201

Re:    Ella C. Capobianco et al vs.
        Dr. Coral Gordon

Dear Dr. Gordon:

I confirm the referral by Med-Chi to this office of your defense pursuant to its By Laws.

I should appreciate your insurance carrier and its counsel advising me of such time, if any, as it would consider a panel of doctors to be of assistance in this matter.

In the meantime, you are cautioned to restrict communication on this subject to authorized representatives of your carrier, its counsel and this office.

Very truly yours,

/s/ John F. King

John F. King

JFK/jms
cc:  Medical & Chirurgical Faculty"

The motion of the appellee further asserted that she had no notice of the appellant's motion for judgment by default.[1]

---

1. That notice of an impending entry of a default judgment is not required is well settled. Md. Rule 306 b; Pumphrey v. Grapes, 215 Md. 573; Maggin v. Stevens, 266 Md. 14. This problem is not one with which we have been endowed the authority to correct; the Legislature or the Rules Committee of the Court of Appeals may find it a matter of concern.

Dr. Gordon then averred that she had a meritorious defense and that no prejudice would result to the appellant from a striking of the default judgment.

The judgment by default entered by Judge Barrett on December the 12th, 1972 became enrolled thirty days thereafter. Appellee's motion to set aside the judgment by default was not filed until April 13th, 1973. Md. Rule 625 a sets the standards of the lower court's revisory power over the judgment.[2] That Rule says in pertinent part, "After the expiration of such period the court shall have revisory power and control over such judgment, only in case of fraud, mistake or irregularity." There is no allegation of fraud or irregularity by the appellant nor in the opinion of the court below could there have been. Appellee states specifically that it is her "position that the entry of the judgment occurred as a result of a mistake."

The mistake that the doctor sets forth, and the mistake to which the Court below alludes in its opinion, is appellee's reliance on the language in the first paragraph in the letter from the Medical and Chirurgical Faculty's attorney confirming the referral "to this office of your defense."

The opinion of Proctor, J., in granting the motion to set aside the default judgment, relied upon the equity case of *Pinkston v. Swift*, 231 Md. 346. His opinion discusses Rule 625 a and then quotes misleading *dicta* from *Pinkston v. Swift, supra*, 351, which cited a discussion of a similar problem, prior to the adoption of the Rule, in *Pugh v. Waclawski*, 211 Md. 346 (another equity case), and in a procession of other cases:

> "However, if a case has not been heard on its merits, an enrolled decree may be set aside on a petition filed in the original proceeding where there is a showing that the decree was entered by

---

2. Md. Rule 625 a:
"For a period of thirty days after the entry of a judgment, or thereafter pursuant to motion filed within such period, the court shall have revisory power and control over such judgment. After the expiration of such period the court shall have revisory power and control over such judgment, only in case of fraud, mistake or irregularity."

surprise or mistake, or where the circumstances are such as to satisfy the court in the exercise of a sound discretion that the enrolled decree should be set aside."

The lower court then stated that it was "persuaded that this case is one where sound discretion should be exercised in favor of setting aside the judgment." Judge Proctor concluded by saying, "So that, whether the case is considered from the point of view of the *Pinkston* case, or a strict interpretation of Maryland Rule 625 (b), the judgment should be set aside." [3] We are constrained to disagree in either instance.

The "strict interpretation" of the Rule leaves us with the question whether the failure to answer because of a misunderstanding of the attorney's letter is encompassed in the term "mistake." The failure of appellee to answer, whether by her own misjudgment, or that of her supposed counsel or agent, is not a "mistake" contemplated by Rule 625 a for setting aside an enrolled judgment entered by default. See *Marine Midland v. State Nat'l. Bk.*, 268 Md. 503; *Penn Central Co. v. Buffalo Spring*, 260 Md. 576; *Household Finance Corp. v. Taylor*, 254 Md. 349; *Sheehi v. Saia*, 250 Md. 198; *Tasea Investment Corp. v. Dale*, 222 Md. 474. These cases have held that the "mistake" contemplated by the rule did not comprehend a failure to answer for reasons that:

An attorney's error of judgment resulted in a failure to answer, *Marine Midland v. State Nat'l. Bk., supra;*

An attorney misunderstood Maryland law and failed to answer, *Penn Central Co. v. Buffalo Spring, supra;*

Direction to answer was mailed to attorney but not received, *Household Finance v. Taylor, supra;*

---

3. It seems clear that the court below meant to refer to a strict interpretation of Md. Rule 625 a. Rule 625 b deals with the granting of a new trial for newly discovered evidence. At no point in the record is there any reference to newly discovered evidence.

The attorney was on vacation when suit papers were submitted, *Sheehi v. Saia, supra;*

Defendant relied upon her insurance company to whom she had delivered the suit papers, *Tasea Investment Corp. v. Dale, supra.*

It takes little imagination to add to this list the appellant's misconception that she was being represented by virtue of the letter set forth above.

With these principles so firmly and recently established, the court below relied upon the broad revisory power discussed in *Pinkston* as an alternative justification. Understandable reluctance in imposing a default judgment in a professional malpractice case caused the lower court to hedge its interpretation of "mistake" against probable error by grasping *Pinkston's* "discretion." Courts cannot go behind an enrolled judgment by default, however, to examine into and determine the validity of the cause of action upon which suit is instituted. *Millison v. Ades of Lexington, Inc.*, 262 Md. 319; *Stansbury v. Keady*, 29 Md. 361.

*Marine Midland v. State Nat'l. Bk., supra*, 511, decided April 3, 1973, demonstrates clearly that the *Pinkston* principle does not apply here:

"Quite recently, in *Ventresca v. Weaver Brothers, Inc.*, 266 Md. 398, 403-05, 292 A. 2d 656 (1972), Judge Levine, for the court, said:

"Rule 625 a provides in relevant part that after a judgment becomes enrolled by the expiration of 30 days following its entry, the court has 'revisory power and control over such judgment, only in case of fraud, mistake or irregularity.' As a result of a host of decisions too numerous to list completely here, *it is now axiomatic that the power of the court to revise and control an enrolled judgment is no longer discretionary. Berwyn Fuel & Feed Co. v. Kolb*, 249 Md. 475, 240 A. 2d 239 (1968); *Suburban Properties Management, Inc. v. Johnson*, 236 Md. 455, 204 A. 2d 326 (1964); *Tasea Inv. Corp. v. Dale*, 222 Md. 474, 160 A. 2d 920 (1960), and *Williams v.*

*Snyder, Adm'r, supra,* are but a few of the cases which stand for that proposition.... (Emphasis added).

"From numerous decisions applying Rule 625 a, there have also emerged the requirements that, in addition to proving 'fraud, mistake or irregularity,' one seeking to set aside an enrolled judgment must also establish that he is acting in good faith, with ordinary diligence, and that he has a meritorious defense. *Temple Hill Baptist Church, Inc. v. Dodson,* 259 Md. 515, 270 A. 2d 802 (1970); *Grantham v. Board of County Commissioners,* 251 Md. 28, 246 A. 2d 548 (1968); *Eliason v. Commissioner of Personnel,* 230 Md. 56, 185 A. 2d 390 (1962); *Berwyn Fuel & Feed Co. v. Kolb,* and *Tasea Inv. Corp. v. Dale,* both *supra.*" [4]

Chief Judge Murphy (now of the Court of Appeals) was equally unequivocal when speaking for this court in *Bowen v. Rochnacher, supra,* 284, that the "total extent of the court's revisory power and control over a judgment after the expiration of thirty days from its entry is limited by Maryland Rule 625 a to cases of 'fraud, mistake or irregularity' ... *Meyer v. Gyro Transport Systems, Inc.,* 263 Md. 518. ..." These adamant holdings, together with their authorities, would seem to lay the problem to rest; and so they do if applied solely to the litigants in this case.

However, the confusion that caused the chance misstep taken by the court below persists. We would offer no guidance to future counsel in avoiding the Charybdis of confusion should we conclude here, and others would run upon the Scylla of *Pinkston's* persistence, as did the court below.

In spite of the apparent strictures of Rule 625 a, an exception granting discretionary latitude in setting aside

---

**4.** The additional prerequisites set forth are not obviated by this opinion's lack of attention to them. The movant must also show good faith, diligence and a meritorious claim. *See also* Bowen v. Rohnacher, 15 Md. App. 280, citing additional authority.

enrolled judgments in cases *not heard upon their merits* continues to be given credence which misleads counsel and court alike. Were this language, usually in the form of *dicta*, a mere passing nod, we could limit ourselves to the rights of these litigants. Unfortunately, when such reference is made, it is given the solemnity of Moses as he carried the tablets of stone from Mount Sinai.

The problem can be restricted to those judgments entered and enrolled without having been heard upon their merits. Although the recent decisions seem clear, as does Rule 625 a, litigants are misled when the court that adopted that rule and emphasized it, (" . . . it is now axiomatic that the power of the court to revise and control an enrolled judgment is no longer discretionary" *Marine Midland v. State Nat'l. Bk.*, *supra*, 511) also repeats the principles of *Pinkston v. Swift*, *supra*, relied upon by Judge Proctor in this case, and by others since. See, *e.g.*, *New Freedom Corp. v. Brown*, 260 Md. 383, 386; *Gray v. Gray*, 245 Md. 713, 715, (*cert. den.* 389 U. S. 972, *rehearing den.* 389 U. S. 1059); *Cramer, Trustees v. Wildwood Co.*, 227 Md. 102, 107; *Kennard v. McKamer Realty Co.*, 224 Md. 490, 496; (all decided after 1957).

This incongruity can be explained, but not justified, by the existence prior to the adoption of Rule 625 a of separate standards for setting aside judgments at law and decrees in equity.[5]

The distinction is clarified by referring to *Poe's Pleading and Practice* (4th Ed., Vol. II) Sec. 392 " . . . nor will the judgment be stricken out except upon clear proof of fraud, deceit, surprise or irregularity. . . ."[6] and turning next to Miller, *Equity Procedure*, (1897), Sec. 288, who adds the additional alternative in equity cases not heard on their

---

**5.** The present Md. Rule 5 o defines judgment as "judgment at law, decree in equity or other act or order of court final in its nature. . . ."

**6.** Prior to the 1957 adoption of Md. Rule 625 a the additional elements of "deceit" and "surprise" were discussed as cause for setting aside enrolled judgments. The deletions in the present Rule are explained in a footnote by Judge Horney in Tasea Investment Corp. v. Dale, *supra*, 478. "Deceit" is encompassed in the more generic term "fraud", and "surprise" has an affinity for "irregularity," thus leaving the three grounds adopted by the rule, "fraud, mistake and irregularity," open to but limited interpretation.

merits, "[W]here the circumstances are such as to satisfy the court that the decree should be set aside." See also Miller, *op. cit.*, Sec. 289. On the equity side, we find a continued reiteration (although seldom an application) of that broad discretionary principle; on the law side, the trend of silence as to the principle is equally apparent.

Miller attributed this principle to the equity case of *Rust v. Lynch*, 54 Md. 636, decided in 1880. While more specifically set forth there, the principle probably evolved from *Burch v. Scott*, 1 G. & J. 393, 426, also in equity.

> "The only question which remains to be considered is, whether it is consistent with the salutary and wholesome *exercise of that sound discretion, which it is admitted the court possesses upon subjects of this nature*, to open or discharge the enrollment and vacate the decree, in this case for the purpose of enabling the defendant to make his defence." (Emphasis added).

Despite a modicum of apocryphal *dicta*, law courts have narrowly restricted the exercise of this "quasi-equitable" revisory power. See, *e.g.*, *Kemp and Buckey v. Cook and Ridgely*, 18 Md. 130, 138; *Tasea Investment Corp. v. Dale*, *supra*, 479-480. The grounds set forth in Rule 625 a appear to limit the grounds previously applied by law courts reviewing enrolled judgments. Among the earliest was the case of *Munnikuyson v. Dorsett*, 2 H. & G. 374, decided in 1828, where a default judgment was entered when a failure to plead was occasioned by the death of defendant's attorney. In declining to set aside the judgment the court noted that "there is no insinuation of fraud or covin." [7] *Munnikuyson v. Dorsett*, *supra*, 378. The court then acknowledged a difference between the grounds applied in law and those permitted in equity cases. "Judgments at law are not lightly

7. "Covin—A collusive or deceitful agreement between two or more persons to prejudice a third." N. Webster, (1860) An American Dictionary of the English Language.
"A secret contrivance between two or more persons to defraud or prejudice another in his rights." Vol. 1, J. Bouvier Law Dictionary (Rawle's Revision, 1897).

to be interfered with. . . . [T]he *fiat* must remain in full force, *unless relief against it be granted in equity.*" *Id.* 378, 379. (Emphasis added). This is the first and the last acknowledgment of that distinction.

There has been no case in either law or equity, since the adoption of Md. Rule 625 a in 1957,[8] that has turned on a "circumstance" such as to "satisfy the court in the exercise of sound discretion" that an enrolled decree should be set aside, that was not within the "fraud, mistake or irregularity" restriction, and so stated. "Discretionary" *dicta* appear only infrequently in law cases (see, *e.g., Shaw v. Adams,* 263 Md. 294, 296; *Harvey v. Slacum,* 181 Md. 206, 209-210) and are attributable to the emotional carry-over of a jurist's alternating between chancellor and judge.

Equity courts, whence we inherit the *Pinkston* principle, jealously guard their discretionary prerogatives as courts of conscience. The same judge, often sitting in the same court, on the same day, may be called upon to leave the Chancellor's discretionary authority and rule under the strictures of law. Such is the juncture at which Judge Proctor's judgments blended. His chancery conscience surfaced when faced with the harsh results of the stringent Rule on the law side. Nor is he the first to struggle to retain an equity discretion when applying the exactitudes of rules of law.[9]

The counterweight to the commendable motives of the court below has a pejorative effect upon the judgments of the court. The integrity of a judgment must be defined at some determinative date and not merely subject to the vicissitudes of a very human judge seeking "circumstances

---

8. The precursor of the present Md. Rule 625 a, G.R.P.P., Part Two, VI Rule 1, was adopted in 1947 for the limited purpose of establishing a uniform date of enrollment. It permitted the courts to retain whatever common law or statutory revisory power that they had prior to the adoption of the rule.

9. *See* Shaw v. Adams, *supra,* 296, *(per curiam),* citing New Freedom v. Brown, 260 Md. 383 and Pinkston v. Swift, 231 Md. 346, as authority for reference to "sound discretion," stated, but not determinative, in those cases. Shaw decided that the simultaneous filing of a general issue plea and the entry of the judgment by default "was precisely the type of irregularity contemplated by Rule 625 a. . . ." *See also* Grantham v. Prince George's County, 251 Md. 28.

such as to satisfy his sound discretion." See *Burch v. Scott, supra*, 426; *Pinkston v. Swift, supra*, 351.

It seems apparent to us that the Rules Committee of the Court of Appeals in formulating Md. Rule 625 a meant to restrict it to its clear language and to make it applicable to both law and equity judgments [10] without distinguishing those obtained without a hearing on their merits. We are regretfully compelled to confine our decision to judgments that have been obtained in law courts. Md. Rule 1085.

We hold therefore, in adopting Md. Rule 625 a, the Court of Appeals intended to restrict courts' revisory power over all enrolled judgments at law to the three grounds set forth in the Rule.

Peripherally, in regard to equity judgments, we recount the cliche' that "if the Court of Appeals had not meant what it said, it would have said so."

We can offer no opinion upon enrolled judgments (or decrees) arising from cases in *equity* not heard upon their merits.

> *Order setting aside and striking out judgment by default and placing the case on the trial calendar reversed; judgment by default, dated December 12, 1972, reinstated; costs to be paid by appellee.*

*Davidson, J., concurring:*

I agree with the result reached by the majority.

---

**10.** Md. Rule 625 a is expressly intended to apply to procedure generally, both at law and in equity. Md. Rule 1a1.