## NEW FREEDOM CORPORATION *v.* BROWN AND MEYER, Trustees

[No. 193, September Term, 1970.]

*Decided January 13, 1971.*

384

The cause was argued before HAMMOND, C. J., and MC-WILLIAMS, FINAN, SINGLEY and DIGGES, JJ.

*Southey F. Miles, Jr.,* and *Joseph W. Janssens, Jr.,* with whom were *Miles & Janssens* on the brief, for appellant.

*William A. Fisher, Jr.,* with whom were *Semmes, Bowen & Semmes* on the brief, for appellees.

HAMMOND, C. J., delivered the opinion of the Court.

New Freedom Corporation, appellant, the successful bidder at the foreclosure sale of a deed of trust covering the Emerson Hotel in Baltimore City, failed to consummate its purchase on the stated ground that the tenant in a store building on Baltimore Street adjacent to the hotel, and part of the property foreclosed, claimed the right to possession and use of the store for years to come.

New Freedom permitted the sale to be routinely ratified but after the order of ratification had become enrolled petitioned the court to set it aside and to order the return of the deposit it had made. Judge Perrott, after a hearing, denied both requests, and granted the petition of the trustees for a resale at the risk of New Freedom. We think Judge Perrott soundly exercised his discretion in ruling as he did.

Had the ratification of the sale been challenged and granted on the merits rather than routinely, the ratifying order after it had become enrolled could have been set aside only for "fraud, mistake or irregularity." Maryland Rule 625 a; *Bachrach v. United Cooperative,* 181 Md. 315, 320-321; *Hersh v. Allnutt,* 252 Md. 513, 519. However, originally there was no determination on the merits and

in such circumstances an enrolled decree may be set aside on a petition filed in the original proceedings if there is a showing that the decree was entered by surprise or mistake or if the circumstances are such as to satisfy the court in the exercise of a sound discretion that the decree should be set aside. *Pinkston v. Swift*, 231 Md. 346, 351; *Pugh v. Waclawski*, 211 Md. 346, 351.

Here, neither surprise nor mistake is in the picture and the chancellor held the hearing to determine whether the circumstances were such as to justify, in the exercise of a sound discretion, his disturbance of the order of ratification. An appeal from a denial of a motion to strike or rescind a judgment does not serve as an appeal from that judgment and the question presented is whether or not the hearing judge abused his discretion. *McCann v. McGinnis*, 257 Md. 499, 512-513, and cases cited such as *S & G Realty v. Woodmoor Realty*, 255 Md. 684, 692-693. We consider the facts and the law solely to review the validity of the conclusion he reached on the point.

The auction was held on August 12, 1969. New Freedom offered $502,000 plus the payment of back unpaid taxes in the sum of $383,113.39, and paid a deposit of $75,000. The advertisement of sale said that three stores fronting on Baltimore Street west of the Hotel were to be sold as part of the mortgaged property but made no representation or references as to leases. Neither the advertisement nor the auctioneer made mention of a time when a buyer could obtain possession. New Freedom's agent had inspected the three stores and it knew that they were tenanted. Prior to the sale the auctioneer did tell a representative of New Freedom that all the store leases would be "wiped out" by the auction. The sale was duly reported to the Court and, no exceptions having been filed, was ratified routinely on September 16, 1969. In early October New Freedom received a letter from a lawyer representing the White Cross store at 116 East Baltimore Street, stating that White Cross's sublease was prior and superior to the deed of trust which had been

foreclosed and therefore White Cross would not vacate the premises.

The significant background facts are these :

In 1937 the Emerson Hotel Company leased for twenty-one years the land and buildings constituting the Emerson Hotel at Calvert and Baltimore Streets and the three adjoining street level retail stores on Baltimore Street to the Emerson Hotel Operating Company. This lease was duly recorded. In March 1955, by written agreement, the term of the lease was extended for an additional period of eighteen years ending in February 1976. The extending agreement was not recorded. Thereafter, the H. R. Weissberg Corporation bought the stock of the Emerson Hotel Company and merged Emerson into Weissberg. To secure the purchase price of the stock, Weissberg executed a deed of trust covering all the properties covered by the 1937 lease and the 1955 extension. Later in 1961 Weissberg became the landlord under the lease, and Paramount Hotel, its wholly owned subsidiary, became the tenant. Still later in that year, Paramount subleased 116 East Baltimore Street to Maryland Office Supply Company, Inc., at an annual rental, payable monthly, which in 1966 leased it to White Cross Stores, Inc. for a term of years at a monthly rental.

On June 13, 1969 the United States District Court for the Northern District of Illinois, Eastern Division, in which Weissberg was seeking reorganization under Ch. X of the Bankruptcy Act, 11 U.S.C.A., authorized the bankruptcy trustee to abandon the Emerson Hotel and ordered that the lease between Weissberg and Paramount be voided and cancelled.

Settlement under the foreclosure sale was scheduled for October 15, 1969 but was extended by agreement until October 22. On October 17 the parties met for a so-called "dry run" to work out in advance the details of the settlement. At this time New Freedom's title company knew of the order of the bankruptcy court. At the meeting New Freedom announced it would not settle until 116

East Baltimore Street became vacant, and it was agreed that the parties would cooperate in evicting White Cross.

Although it had announced as an absolute that it would not settle until 116 East Baltimore Street was vacant and although it knew it had not been vacated, New Freedom appeared at the title company on October 22 ready, it says now, to settle. The trustees did not appear because they knew White Cross was still in possession.

On October 24 New Freedom's lawyer called the trustees' lawyer to ask for a period of thirty days in which to decide whether to consummate its purchase and to say that if the requested extension were not granted it would call off the deal and demand the return of the $75,000 deposit. The same day, the trustees' lawyer wrote the buyer's lawyer that the 1937 lease had been voided by the bankruptcy court in Chicago, enclosing a copy of the court's order (New Freedom says this was the first it knew of the order) and advised him that the voiding of the "head-lease" annulled the leasehold interest of White Cross. After this New Freedom never even made a pretense of settling.

New Freedom's argument is that a purchaser at a mortgage foreclosure sale is entitled to receive a marketable title, that a marketable title is one not subject to litigation, and that a purchaser will be subjected to litigation if there is an occupant claiming a legal right to possession of the property purchased. It stresses the inability of the trustees to give "reasonably safe possession" and "full possession" of all that it had bought. It contends further that the fact of an enrolled decretal order of ratification of the foreclosure sale does not prevent the court from setting aside the sale.

Judge Perrott held that an unrecorded lease for more than seven years creates a tenancy from year to year, not as an extension of the old lease but as a new lease for each year of such holding over, implied by law from the possession of the occupant and the landlord's acceptance of the rent, and, therefore, any year of tenancy starting after July 31, 1961, the date of the deed of trust, was sub-

ject and subordinate to that deed. Noting that Ch. X, § 511, of the Bankruptcy Act gives the court in which the petition is filed "exclusive jurisdiction of the debtor and its property, wherever located," Judge Perrott held also that the order voiding the head-lease terminated White Cross's rights to remain in the store building and that "[t]he alleged tenancy of White Cross Stores, Inc., in the Emerson Hotel property, constitutes no encumbrance on the property."

The heart of New Freedom's contentions is that the trustees could not give a marketable title because White Cross's claimed rights both subjected it to the hazards of litigation and prevented the obtention of immediate possession of 116 East Baltimore Street. We do not agree. A title to be marketable need not be flawless. The test was well enunciated in *Zulver Realty Co. v. Snyder*, 191 Md. 374, 384, in these words:

> "A marketable title is a title free from encumbrances and any reasonable doubt as to its validity. No specific rule can be laid down as to what doubts will be sufficient to make a title unmarketable. The general rule is that the purchaser is entitled to a deed which will enable him to hold the land in peace and, if he wishes to sell it, to be reasonably certain that no flaw will appear to disturb its market value. However, a title, in order to be marketable, need not be free from every conceivable technical criticism. It is not every possibility of defect or even threat of suit that will be sufficient to make a title unmarketable. Objections based on frivolous and captious niceties are not sufficient. In other words, a marketable title is one which a reasonable purchaser, who is well informed as to the facts and their legal bearings, and ready and willing to perform his contract, would be willing to accept in the exercise of that prudence which business men ordinarily use in such transactions."

Here we think there was no reasonable doubt that the title the trustees offered New Freedom was good and marketable. The cases make it plain that White Cross was a tenant for short periods, month to month or at the most year to year, *Cook v. Boehl,* 188 Md. 581, 591; *Darling Shops v. Balto. Center,* 191 Md. 289; *Kikas v. Baltimore County,* 200 Md. 360, 364-365; *Annapolis Fire & Marine Ins. Co. v. Rich,* 239 Md. 573, because White Cross derived its rights from a lease for more than seven years which was not recorded. The tenancy under which White Cross occupied 116 East Baltimore Street at the time of the foreclosure sale began long after the execution and recordation in 1961 of the deed of trust that was foreclosed, and therefore the foreclosure sale did "wipe out" White Cross's lease, as the auctioneer said it would. See Code (1968 Repl. Vol.), Art. 66, Sec. 20 and *Smith v. Pritchett,* 168 Md. 347, 352-353. Although the auctioneer gave sound legal advice, New Freedom, having actual knowledge of the tenancy, was charged with the duty to ascertain for itself the legal status and effect of the lease. This Court said in *Cook v. Boehl, supra* 591: "Of course, a person purchasing property with knowledge that a tenant is in possession of the property is charged with notice as to the tenant's rights under the lease to him. *Waters v. Wambach,* 140 Md. 253 * * *."

Inability of a seller to give a purchaser immediate possession does not necessarily result in an unmarketable title. *Goldberg v. Feldman,* 108 Md. 330, 339. There the purchaser Feldman agreed to buy on condition that the "property shall be free from encumbrances and have a good and marketable title," and there was a tenant occupying the property who refused to vacate after being notified to do so. The Court said:

> "As the time when possession was to be given was not mentioned in the agreement, Mr. Feldman's attorney could not make a demand for immediate possession a condition upon which he would carry the agreement into effect."

Here the time when possession was to be given was not mentioned in the advertisement of sale or at the auction. New Freedom had no valid legal grievance merely because it would have had to wait to obtain possession of 116 East Baltimore Street. That the situation in which it found itself occurs from time to time is evidenced by Maryland Rule 637 b, which invites a purchaser who desires to evict an occupant who continues possession after a foreclosure sale of the property he occupies to apply to the court involved for an order granting him possession. New Freedom made no effort to obtain the relief offered by Rule 637 b.

*Connaughton v. Bernard,* 84 Md. 577, 590, refutes the claim of appellants that the chancellor should have rescinded the order of ratification. The holding there, after consideration of facts analogous in some significant respects to those of this case, was that the chancellor acted correctly in refusing to rescind the ratification. The Court said:

> "When a sale has been ratified * * * the facts relied on by one seeking to have the sale set aside must be very clearly established and must be of such character as [to] *strongly appeal to the conscience of the Court.* But when the Court can see that *injustice will be done a purchaser* by compelling him to take the property, it has the power to rescind the order of ratification, if the proceeds of sale are still within its control, provided the purchaser has not by his conduct or neglect deprived himself of the right to relief." (Emphasis added.)

We see nothing here favorable to the appellants that should have appealed to the conscience of the court and nothing that should have indicated to the court that injustice would be done if the order of ratification were not rescinded. All the indications are to the contrary.

What the Court said further in *Connaughton* in con-

sidering the claim that an easement burdened the property purchased, is apposite here (pp. 597-598 of 84 Md.) :

"The property was offered at public auction on the premises and was examined by [the purchaser], who was present and a bidder at the sale. * * * [The purchaser] did not urge the [easement] as one of the objections to the title, and there is nothing to show that he was not aware of this easement before he purchased the property, whilst there is some evidence to the effect that there was enough to put him on inquiry about it. In fact there is a total failure of evidence to show that he was in any way misled by the trustee or that he was not fully aware of the condition of the title to the lot with reference to building over the alley, as well as what is termed the Ryan easement. Without some evidence to that effect the Court would not have been justified in refusing to ratify the sale, if objection had been made before that was done, and there is all the stronger reason why it should not rescind an order previously passed after notice had been given in accordance with the established practice of the Court."

See also *McCann v. McGinnis, supra,* 257 Md. 499, 512-513.

The orders appealed from will be affirmed.

*Orders appealed from affirmed,*
*with costs.*