BELTWAY HOMES, INC. *v.* FLORENT
B. HUGHES ET AL.

[No. 806, September Term, 1974.]

*Decided May 7, 1975.*

The cause was argued before ORTH, C. J., and GILBERT and LOWE, JJ.

*Stephen H. Helfrich,* with whom was *Robert P. Slaby* on the brief, for appellant.

*James B. Deerin, Jr.,* with whom was *John H. Treanor* on the brief, for appellees.

GILBERT, J., delivered the opinion of the Court.

Beltway Homes, Inc., appellant, purchased at a foreclosure sale in Prince George's County, Maryland, a house represented as having *four* bedrooms. After ratification of sale by the court the appellant discovered that the house contained only *three* bedrooms. Approximately three and one-half months following the ratification of the sale appellant moved to rescind the sale. Appellant filed its motion in the foreclosure proceeding. Appellant asserted, in effect, in the trial court, that it had purchased "a pig in a poke", and found the "pig" was much smaller than advertised.

The matter was heard in the Circuit Court for Prince George's County. The chancellor ruled that inasmuch as the order of ratification was passed more than thirty days prior to the filing of appellant's "Motion To Set Aside Decree", the appellant was required to proceed under the provisions of Md. Rule 625 a. Such a ruling was made by the chancellor because the decree was enrolled, and he believed that the court no longer possessed the authority to revise and control it under *Ventresca v. Weaver Bros.,* 266 Md. 398, 292 A. 2d 656 (1972) and *Travelers Indemnity Co. v. Rosedale Passenger Lines, Inc.,* 450 F. 2d 975 (4th Cir. 1971).

Md. Rule 625 a provides:

"For a period of thirty days after the entry of a

judgment, or thereafter pursuant to motion filed within such period, the court shall have revisory power and control over such judgment. *After the expiration of such period the court shall have revisory power and control over such judgment, only in case of fraud, mistake or irregularity."* (Emphasis supplied).

The trial judge opined that in addition to the appellant's having to show "fraud, mistake or irregularity", appellant must also demonstrate that it had a meritorious claim and was acting in good faith, with due diligence. *Bowen v. Rohnacher,* 15 Md. App. 280, 290 A. 2d 560 (1972). Having determined that there was no fraud, mistake or irregularity shown, and that appellant had not acted with due diligence, the court denied the appellant's motion, ordered the deposit money theretofore paid by the appellant forfeited to the Trustees and authorized the Trustees "to sell the property at the risk and expense of " the appellant. Md. Rules W74 f and BR6.

In order to set the scene for a discussion of the applicable law, a brief resume of the events leading to this litigation is helpful. As a result of a default under the terms of a promissory note, secured by a deed of trust, a foreclosure proceeding was instituted against the property known as 4214 Canyonview Drive, Upper Marlboro, Maryland. The Trustees named in the deed of trust, pursuant to a sale clause embodied in the encumbrance, advertised the property in the *Prince George's Sentinel.* The advertisement read in pertinent part:

> "Trustees sale of valuable, improved real estate, located in Prince George's County, Maryland, improved by premises known as 4214 Canyonview Drive, Upper Marlboro, Maryland.
>
> * * *
>
> ... the undersigned Trustees will sell at public auction in front of the Court House door in Upper Marlboro, Maryland, on Thursday, February 14,

1974, at 10:00 A.M., property described in the Deed of Trust as follows: . . .

*This property is improved by a 4 bedroom, 1 1/2* baths, living, dining, kitchen and recreation room, 2 stories, split foyer, brick and frame house.

### Terms of Sale

A deposit by cash, certified check, or check acceptable to the Trustees in the amount of $2,000 will be required of the purchaser at the time of sale. *The balance in cash with interest at 8 per centum per annum from the date of sale to the date of payment,* payable within ten days after final ratification of sale.

\* \* \*

Compliance with the terms of sale shall be made within ten days after final ratification of sale or deposit shall be forfeited and the property resold at the risk and cost of the defaultant purchaser." (Emphasis supplied).

Mr. James Dana Johnson, an employee of the appellant, read the advertisement and on the same date or within a few days thereafter, drove to the subject property. The house was "boarded up." Each window and door had been covered with wood in order to prevent access. Johnson only observed the property from the exterior. He testified that he contacted the attorney for the Trustees, and the attorney refused Johnson permission to enter the premises. Neither Johnson nor any other employee of the appellant, so far as the record reveals, made any effort to contact the Trustees directly in order to obtain permission to inspect the interior of the house. Johnson bought the property on behalf of his employer, the appellant, on a bid price of $35,600.00. A certificate of sale was filed by the customer, and the court, on April 29, 1974, ratified the sale. Following the ratification, Johnson, accompanied by a workman, went to the property and removed certain boards from the doors and

windows. Johnson entered the house and discovered that it contained three bedrooms, not the advertised four. Under date of June 17, 1974, counsel for Beltway wrote to the attorney for the Trustees and advised that, "Beltway . . . is not interested in making another offer on this property at this time." Beltway demanded the return of its deposit because "the house was advertised as being four bedrooms but actually contained only three bedrooms. Beltway . . . had no opportunity or privilege to inspect . . . [the] property prior to bidding . . . and acted in complete reliance upon the description of the property . . . in the public notices." Obviously, the Trustees did not return the deposit money to appellant. Thereafter, appellant, through its attorney, informed the appellees per letter of August 2, 1974, that it intended to litigate the return of the deposit unless the Trustees surrendered. the earnest money to the appellant. The Trustees apparently declined to heed Beltway's warning, and, on August 9, 1974, the instant proceeding was commenced.

At the hearing the appellant presented testimony from an expert witness that the house was worth approximately $2,500.00 less than it would have been if it had contained four bedrooms. One of the Trustees testified that no one from Beltway had ever requested her permission to view the premises either before or subsequent to the sale. The Trustees admitted, however, that through a clerical error the property had been advertised as a four bedroom dwelling. The chancellor found, as we have previously observed, that there was no fraud, mistake or irregularity within the meaning of Md. Rule 625 a, that Beltway had not acted with due diligence, and that "the 'misrepresentation' or 'mistake' contained in the advertised notice of sale was in any event inconsequential."

In *Capobianco v. Gordon,* 19 Md. App. 662, 313 A. 2d 517 (1974), this Court discussed the confusion that obviously exists in the minds of the Bench and Bar [1] relative to Md.

---

1. We observe that in the 1974 Cumulative Supplement to the Maryland Rules of Procedure the Committee Note to Md. Rule 625 a states: "This

Rule 625 a, and the exception that has been carved from it by the Court of Appeals. Judge Lowe, in *Capobianco,* pointed to the area of difficulty and stated at 668-9:

"In spite of the apparent strictures of Rule 625 a, an exception granting discretionary latitude in setting aside enrolled judgments in cases *not heard upon their merits* continues to be given credence which misleads counsel and court alike. Were this language, usually in the form of *dicta,* a mere passing nod, we could limit ourselves to the rights of these litigants. Unfortunately, when such reference is made, it is given the solemnity of Moses as he carried the tablets of stone from Mount Sinai."

Judge Lowe went on to state:

"This incongruity can be explained, but not justified, by the existence prior to the adoption of Rule 625 a of separate standards for setting aside judgments at law and decrees in equity." (Footnote omitted).

The *Capobianco* holding was limited to actions at law and it specifically held that the trial "court's revisory power over *enrolled judgments at law*" is restricted "to the three grounds set forth in the Rule [625 a]." As if anticipating the factual situation now before us, Judge Lowe opined at 672:

"We can offer no opinion upon enrolled judgments (or decrees) arising from cases in *equity* not heard upon their merits."

---

section is applicable to both law and equity judgments. (For a definition of 'Judgment', see Rule 5 o). It prescribes the only three grounds upon which a court may exercise revisory power over an enrolled judgment. Such decisions as Pinkston v. Swift, 231 Md. 346, 190 A. 2d 533 [(1963)] (see discussion of these decisions in Capobianco v. Gordon, 19 Md. App. 662, 313 A. 2d 517 (1974)), which indicates a broader discretion exists in the case of equity judgments, are no longer applicable." We think the Committee Note to be misleading. *Pinkston* specifically states that there is a distinction to be made between equity decrees entered after a hearing on the merits and those entered without a hearing upon the merits. *Capobianco* underscores that exception, although it notes that the exception had not been applied.

*Capobianco* also notes at 671 that:

"There has been no case in either law or equity, since the adoption of Md. Rule 625 a in 1957, that has turned on a 'circumstance' such as to 'satisfy the court in the exercise of sound discretion' that an enrolled decree should be set aside, that was not within the 'fraud, mistake or irregularity' restriction, and so stated." (Footnote omitted).

We now apply the exception.

It must be noted that the ratification of the sale was granted in a routine manner. Had the ratification been assailed and granted on its merits, the order would have become enrolled after thirty days, and then could only have been set aside for "fraud, mistake or irregularity." Md. Rule 625 a; *New Freedom Corp. v. Brown,* 260 Md. 383, 385, 272 A. 2d 401 (1971). In the instant case, however, there was originally "no determination on the merits and in such circumstances an enrolled decree may be set aside on a petition [2] filed in the original proceedings", *New Freedom Corp. v. Brown, supra,*[3] if the movant can demonstrate that "the decree was entered by surprise or mistake or if the circumstances are such as to satisfy the court in the exercise of a sound discretion that the decree should be set aside." *New Freedom Corp. v. Brown, supra; Pinkston v. Swift,* 231 Md. 346, 351, 190 A. 2d 533 (1963); *Cramer, Trustees v.*

---

**2.** *Black's Law Dictionary* (4th ed. 1968), in discussing the difference between "petitions" and "motions", states at 1302: "The word 'petition' is generally used in judicial proceedings to describe an application in writing, in contradistinction to a motion, which may be *viva voce*. . . . The principal distinction between motions and petitions lies in the fact that motions, though usually made in writing, may sometimes be made orally, while a petition is always in writing. . . ." It is indubitable that the Court of Appeals in New Freedom Corp. v. Brown, *supra,* utilized the word "petition" interchangeably with the word "motion". Unless the matter is orally made, the distinction between "petition" and "motion" is without a difference. Therefore, in this case, inasmuch as the motion to set aside the decree was in writing, it is indistinguishable from a petition.

**3.** The procedure utilized in New Freedom Corp. v. Brown, *supra,* is apposite to that employed in the case at Bar. There, as here, the sale was routinely ratified, and there, as here, after the order of ratification had become enrolled, the purchaser petitioned the court to set the sale aside and order a return of the deposit money.

*Wildwood Co.*, 227 Md. 102, 107, 175 A. 2d 750 (1961); *Kennard v. McKamer Realty Co.*, 224 Md. 490, 496, 168 A. 2d 369 (1961); *Pugh v. Waclawski*, 211 Md. 346, 351, 127 A. 2d 376 (1956).

> "[T]he facts relied on by one seeking to have the sale set aside must be very clearly established and must be of such character as strongly appeal to the conscience of the Court." *Connaughton v. Bernard*, 84 Md. 577, 590, 36 A. 265 (1896).

An appeal to this Court from a denial of a motion to set aside a decree, or the denial of a motion to strike or rescind a decree or judgment, does not serve as an appeal from that judgment. *New Freedom Corp. v. Brown, supra.* The sole question presented by an appeal from such a denial is whether the trial court abused its discretion. *S. & G. Realty v. Woodmoor Realty*, 255 Md. 684, 692-3, 259 A. 2d 281 (1969).

In the case now before us the chancellor said,

> "The description of the property to be sold at this foreclosure fairly and accurately described the location and general features of the improvements. The names of the Trustees and the name and address of their attorney was also provided. *Yet it seems that Beltway made no effort to inspect the property or make any inquiries concerning it."* (Emphasis supplied).

The italicized statement is not supported by the record. Mr. Johnson testified, as we have previously observed, that he had talked to Mr. Sloan, the then attorney for the Trustees, subsequent to the sale, but before the ratification, and was told that he "could not get into the property to see it." Johnson also related to the court that he did not contact the Trustees because he was operating through Beltway's lawyers and they told him "you cannot get into the property unless you get permission from the attorney who has handled it for the Trustees."

One of the Trustees informed the chancellor that her

attorney was without authority to deny access to the house to anyone. She stated, in response to a question of what "normally happens" when a prospective bidder asks to see the house, that counsel "would either refer them to the Trustee or he might get the information from the Trustee and give it for them. But I know of no case where the attorney did not say 'you should telephone the Trustees' and tell them to whom they should call, to whom the person should direct the inquiry." Such a statement falls well short of a denial of Johnson's testimony. It is merely a discourse on what "normally happens", and most certainly, the discourse does not in this case signal that the Trustees' then attorney did not deny Johnson the permission of inspecting the interior of the house. The Trustees' counsel, who allegedly declined the inspection privilege, was not called as a witness by either side.

The trial judge found that the mistake in advertising the property as a four bedroom house, when it in fact only had three, was not a material misrepresentation. To underpin his decision the judge relied upon *Carozza v. Peacock Land Corp.*, 231 Md. 112, 188 A. 2d 917 (1963) wherein the Court stated:

> " . . . [R]eliance upon a misrepresentation of fact, intentionally misrepresented or otherwise, is justifiable only if the fact misrepresented is material."

The Court of Appeals, in *Carozza,* speaking through Judge Prescott, (later Chief Judge) also said:

> " . . . It is well established that if the question be raised in time, *the court will see that no undue advantage is taken of a purchaser at a judicial sale, and he will not be compelled to consummate the sale if it would be inequitable to require him to do so, especially where there has been misrepresentation, intentional or otherwise, on the part of the trustee. . . .* The Court stated that this rule was necessary for the purposes of justice, as well

as to encourage bidding at judicial sales. See also *Paper Bag Co. v. Carr*, 116 Md. 541, 82 A. 442 [(1911)]; *Ivrey v. Karr*, 182 Md. 463, 34 A. 2d 847 [(1943)]; *Talbert v. Seek* [210 Md. 34, 122 A. 2d 469 (1956)]; Miller, *Equity Procedure*, § 499; 30A Am. Jur., *Judicial Sales*, §§ 122-138; 50 C.J.S., *Judicial Sales*, § 48. The rationale of the cases is well expressed in C.J.S., *ibid.*, wherein it is stated that, in passing on a purchaser's application to be released from his bid, the court will apply the equitable rules governing the reformation, rescission, or specific performance of contracts, and will grant relief where the contract could not be specifically enforced, or could be rescinded, and will refuse relief where the contract could be specifically enforced or could not be rescinded." (Footnote omitted). (Emphasis supplied).

The Court continued by stating:

"Of course, the appellants have no standing to complain of the misrepresentations, if they knew the facts as they actually existed. *Stewart v. Devries*, [81 Md. 525, 32 A. 285 (1895)]; *Boring v. Jungers*, 222 Md. 458, 160 A. 2d 780 [(1960)]. And, as was said in *Kauffman v. Walker*, 9 Md. 229, 240 [(1856)], judicial sales will not be set aside for causes that the parties in interest might with a reasonable degree of diligence have obviated. . . ."

We note that the chancellor, quoting from *Carozza v. Peacock Land Corp.*, *supra*, stated:

"A fact is material if its existence or non-existence is a matter to which a reasonable man would attach importance in determining his choice of action in the transaction, or the maker of the misrepresentation knows that its recipient is likely to regard the fact as important although a reasonable man would not so regard it."

Notwithstanding Johnson's testimony that he would not

have purchased the house for the appellant if Johnson had known that it contained only three bedrooms, and the expert witness's testimony that the house with three bedrooms was worth $2,500.00 less than the four bedroom version, the court concluded that the misrepresentation was not material. We, however, think the misrepresentation to be material because 25 per cent of the advertised bedroom space was non-existent, and the uncontradicted evidence was to the effect that the appellant would not have purchased the house had appellant known that it only contained three bedrooms.

We also think that the action brought by the appellant was done so in a timely manner and with due diligence. It is clear from the record that the discrepancy between the number of bedrooms advertised and the number of bedrooms in the house was called to the attention of the Trustees' counsel immediately after the discovery. The discovery occurred when Johnson, after ratification went to the house, and on the assumption that settlement was a matter of formality, removed certain boards and entered. Appellant was, under the terms of the sale, paying interest at 8 per cent per annum on the unpaid purchase price so that it had a vital interest in inspecting the property. A letter from appellant's counsel to the then attorney for the appellees under date of June 17, 1974 stated:

> "As per our conversation of June 12, I have spoken to Dana Johnson of Beltway Homes, Inc. about their intentions regarding the above captioned matter [foreclosure sale of 4214 Canyonview Drive]. He indicated that Beltway . . . is not interested in making another offer on this property at this time. He . . . demands to have back . . . [the] deposit and to be released from any obligations under . . . [the] agreement with your client. The basis for this demand is, of course, that the house was advertised as being four bedrooms but actually contained only three bedrooms. Beltway . . . had no opportunity or privilege to

> inspect this property prior to . . . sale . . . and acted
> in complete reliance upon the description of the
> property as published. . . ."

The record further reflects that on August 2, 1974 the appellant again demanded the return of its money. Suit was filed, as we have already observed, on August 9, 1974.

From the letter of June 17, 1974, one may draw a rational inference that the Trustees had endeavored to prevail upon the appellant to "make another offer" for the property. Although the chancellor felt that the appellant's delay in filing the motion demonstrated a lack of "due diligence" and thus, under *Bowen v. Rohnacher, supra,* precluded it from obtaining the sought relief, we have a different view. We cannot say that a delay of three and one-half months before filing suit to set aside the sale is unreasonable or lacking in "due diligence", under the circumstances of this case. This is particularly so when, as here, there has been an on-going effort to recover the deposit money short of litigation.

As we see the facts, the Trustees were at fault in the first instance. It was their negligent misrepresentation that placed appellant in a position of peril from which the appellant sought to extricate itself. Johnson's uncontroverted testimony was that it was the refusal of the Trustees' then counsel to allow inspection of the property that compounded the Trustees' error, and thus forestalled an earlier opportunity to correct the wrong.

We think the words of Judge Prescott in *Carozza v. Peacock Land Corp., supra,* bear repeating because they are particularly apropos to the reason the decree in this case must be set aside.

> " . . . [T]he court will see that no undue
> advantage is taken of a purchaser at a judicial sale,
> and he will not be compelled to consummate the
> sale if it would be inequitable to require him to do
> so, especially where there has been misrepresen-
> tation, intentional or otherwise, on the part of the
> trustee. . . ."

Here, the misrepresentation was unintentional, but it would be "inequitable to require" appellant "to consummate the sale." The chancellor should have granted the motion to set aside the ratification order, and his failure to do so constituted an abuse of discretion.

*Order denying motion to set aside decree forfeiting the $2,000.00 deposit money and directing trustees to sell the property at the risk of appellant, reversed.*

*Costs to be paid by the appellees.*