## JULIAN I. RICHARDS *v.* ELIZABETH ANN RICHARDS ET AL.

[No. 1077, September Term, 1974.]

*Decided June 10, 1975.*

The cause was argued before THOMPSON, GILBERT and MOORE, JJ.

*Roy D. Cromwell* for appellant.

*David B. Nicholson,* with whom were *Spriggs, Nicholson & Myers* on the brief, for appellees.

MOORE, J., delivered the opinion of the Court.

On October 30, 1974, the Circuit Court for Montgomery County, sitting as an Orphans' Court,[1] removed appellant, Julian I. Richards, an attorney and a resident of Virginia, from his office as personal representative of the estate of his aunt, Edith A. Parsons, who died domiciled in Montgomery County on February 19, 1973. The two appellees are his sisters. They are residents of Kenwood, Montgomery County, Maryland. Appellant and the appellees are the residuary legatees of the estate which has a gross value in excess of $650,000. The principal administration is, of course, in Maryland and there are ancillary administrations in the District of Columbia and in the Commonwealth of Virginia.

In support of the appeal, Mr. Richards variously argues that a personal representative in Maryland may not be removed after a motion for an Order to Show Cause, as was done in the instant case, but only upon a written petition pursuant to the provisions of Maryland Code (1974) Estates and Trusts, § 6-306 (c);[2] and that the court below (Mathias, J.) was arbitrary and capricious in removing him as personal representative, denied him due process of law and acted

---

1. By Constitutional Amendment the Orphans' Court has been abolished in Montgomery County and its authority, powers and jurisdiction conferred upon the Circuit Court. Md. Const., Art. IV, § 20; 1963, ch. 744, ratified November 3, 1964.

2. This Code provision was formerly § 6-306 of Article 93, the Decedents' Estates law, which was repealed by Acts 1974, ch. 11, § 1, effective July 1, 1974.

upon insufficient evidence. After careful review of the proceedings below, we find no error and shall affirm.

I

In August, 1971, appellant had petitioned the United States District Court for the District of Columbia for his appointment as Conservator of his aunt's estate. In September, 1971, the Court instead appointed John E. Powell, Esq., of the District of Columbia Bar as Conservator. *See, In re Edith A. Parsons, a Conservatorship, Julian I. Richards, Appellant,* 328 A. 2d 383 (D.C. App. 1974). The conservatorship included a one-half interest in an apartment house in the District of Columbia having a total aggregate value of $400,000. In the summer of 1972, the duly appointed conservator was informed by the trustee of an estate owning the other one-half interest in the apartment house that he intended to sell the trust interest and would seek a partition if necessary. As noted by the District of Columbia Court of Appeals in the case above cited, the conservator desired to avoid a partition and sought consent for the sale from appellant and his two sisters. Only appellant objected. As Judge Nebeker stated for the District of Columbia Court of Appeals (p. 384):

> "The trial court held a hearing on October 20, 1972, to air Richards' objections which included, along with certain irrelevancies, concern over the loss of rental income. The trial court, perceiving the issue to be what would be in the best interest of the ward and the ward's estate, found
>
>> 'that it is in the best interest of the estate of the ward, and of the ward individually, that the conservator be permitted to proceed to the private sale of the real estate in question . . . .'
>
> The court then ordered the conservator to proceed with a private sale of the one-half interest."

Appellant noted an appeal from that Order on August 14,

1973. The appeal was dismissed in the case cited on November 13, 1974.[3] During the pendency of the appeal, the conservator was unable to consummate the sale, as directed by the Superior Court, and Mrs. Parsons' death on February 19, 1973 terminated the conservatorship.

The events which thereafter transpired were detailed in a sworn affidavit with numerous supporting documents filed by the sisters with their motion below for an Order to Show Cause. The documents related to the conservatorship in the District of Columbia, the ancillary proceedings in the decedent's estate in the District of Columbia and in Virginia and included, as well, copies of administration papers filed in the principal administration in the Circuit Court for Montgomery County.[4]

We find it appropriate to summarize the pertinent facts under the following categories:

### ADMINISTRATION OF ESTATE IN MARYLAND

Appellant, Julian I. Richards, was appointed as Executor of the Last Will and Testament of Edith A. Parsons by a codicil to her will executed on October 10, 1967. (The original will executed on July 17, 1964, had named the appellees as co-executors. Both the original will and codicil were prepared by appellant who is a member of the District of Columbia Bar.) Appellant delayed taking action to obtain Letters of Administration in the aunt's estate. The two sisters, acting upon the advice of counsel, filed a petition for

---

3. The District of Columbia Court of Appeals, in the case cited above, dismissed the appeal on *res judicata* grounds. The case was characterized in the opening paragraph of the Court's opinion as "the third in a spate of appeals challenging various steps leading to the sale of real property during the administration of a conservatorship of his aunt's estate."

4. The Show Cause Order was signed on August 13, 1974 and provided for a hearing to take place October 7, 1974. Mr. Richards filed an opposition to the motion on August 15, 1974. He also filed on or about September 11, 1974, a Notice of Appeal from the Order to Show Cause signed by Judge David L. Cahoon, as Chambers Judge, on August 13, 1974. This appeal was, of course, improper but we find in the record no formal disposition of it. We observe an apparent proclivity on the part of Mr. Richards for taking appeals in that, as of August 1974, he had some nine appeals pending involving the conservatorship and ancillary proceedings, all of which have been dismissed by order of the District of Columbia Court of Appeals.

probate in the Circuit Court for Montgomery County, sitting as an Orphans' Court, on May 8, 1973, and stated therein that their brother "advised petitioners he intends to take no action in decedent's estate for six months from date of death and none has been taken to date." [5]

The petition of the sisters resulted in an Administrative Probate Order by the Register of Wills for Montgomery County on May 14, 1973, when the sisters were appointed personal representatives of the Estate of Mrs. Parsons and the will and codicil were admitted to probate.[6] This action of the appellees precipitated the filing by the appellant on May 15, 1973 of a petition for his own appointment as personal representative, as the executor designated in the Last Will and Testament of Edith A. Parsons. After a hearing before Judge H. Ralph Miller, an Order was signed on July 31, 1973, whereby the sisters were dismissed as personal representatives, and by separate Order, on the same date, Judge Miller appointed appellant as executor under a nominal bond in the sum of $32,000.[7]

Appellant was required, by the provisions of Estates and Trusts, § 7-201,[8] to file an inventory of real and personal property owned by the decedent on or before October 1, 1973, "within three months after his appointment." The record shows, however, that the inventory was submitted by him in piece-meal fashion, separate schedules having been filed

5. On April 26, 1973, appellees' counsel had sent them a written communication, with a carbon copy to appellant, responding to their request for legal advice as to the extent to which the estate might be prejudiced by such delay and whether they might take any action in the interest of the estate. Counsel explained therein, *inter alia,* that the Federal Estate Tax law permits an option for valuation of the estate, namely, valuation at time of death or six months after date of death. He said: "If Julian fails to act for six months, the option date will pass and if the stock market continues to decline the personal representative may be confronted with paying a tax with assets worth considerably less than the valuation upon which the tax will be asserted."

6. A nominal bond in the amount of $32,000 was approved. The sisters published against creditors, for the statutory period, requiring the filing of claims on or before November 14, 1973.

7. Thereafter the appellees filed a first and final account showing no assets subject to the jurisdiction of the Court as having been collected by them and this account was approved by Order of Chief Judge Ralph G. Shure on March 5, 1974.

8. Formerly Art. 93, § 7-201.

with the Register of Wills over a period of time from January 2, 1974, to March 26, 1974, when the "Summary" sheet was filed — almost eight months after the date of his appointment. The Summary showed a gross valuation of $659,247.37. It incorrectly included the real property of the decedent in the District of Columbia and in the State of Virginia, as well as tangible personal property in Virginia, necessitating a revision at the direction of a Deputy Register so as to reflect real property in the sum of $45,000, the decedent's one-half interest in real property in Montgomery County, rather than total real property in the sum of $297,000.

Also within three months after the grant of letters, the executor was required by the provisions of Md. Code, Art. 81, § 155 to file a report under oath with the Register of Wills as to property held as joint tenants or other interests in property less than an absolute estate and of any transfers made by the decedent within two years of the date of death. Appellant's report, dated April 24, 1974, was stamped as filed on April 25, 1974 — almost nine months after the date of his appointment.

Mr. Richards' first account as executor, then required to be filed within eight months from the date when Notice of Publication is given,[9] was filed on May 2, 1974, some three weeks after it was due, without any request for an extension. It was developed, in questioning by Judge Mathias at the hearing below, that the account included certain receipts and disbursements relating to property outside the State of Maryland which the court did not consider properly a part of the Maryland accounting.

When Judge Mathias executed the order removing appellant as executor under date of October 30, 1974, he also ordered that Suburban Trust Company be appointed as his successor.[10]

---

9. Art. 93, § 7-305 (a) (1) required the filing within 8 months. The same section of the Estates article has extended the time to 9 months.

10. Estates and Trusts Art., Sec. 6-306 (d) requires the court to appoint a successor personal representative "concurrently with the removal of a personal representative." The transcript of the proceedings below reads that Judge Mathias considered also the appointment of the Ancillary Administrator in the District of Columbia.

## ANCILLARY PROCEEDINGS IN WASHINGTON, D. C.

The appellees, Barbara and Elizabeth Richards, had qualified as Ancillary Executors of the estate of their aunt before the United States District Court for the District of Columbia whose jurisdiction was later transferred to the Superior Court of the District of Columbia. Following their dismissal by Judge Miller's order of July 31, 1973, they permitted revocation of their Ancillary Letters Testamentary without contest and the issuance of Letters to their brother, the appellant.

As previously noted, appellant had, prior to the death of Mrs. Parsons, filed an appeal from an order nisi that the sale of the District of Columbia apartment house property for the sum of $400,000 in cash be ratified and confirmed and from a subsequent order of the Superior Court for the District of Columbia confirming the private sale of the ward's one-half interest in the real estate. Appellant, upon becoming Ancillary Executor in the District of Columbia, did not withdraw his appeal from the orders pertaining to the sale of the apartment property. The proceeds of sale were, however, needed to pay debts of the estate and federal estate taxes in the total aggregate sum of approximately $200,000. His sisters accordingly filed a motion for a rule to show cause in the Superior Court of the District of Columbia as a result of which a hearing was held on November 8, 1973.

Following that hearing, the Court by order dated December 10, 1973 ordered that appellant, as Ancillary Executor of the Estate of Edith A. Parsons, sign and execute within ten days all necessary documents and instruments to consummate the sale, subject to removal in the event of his failure or refusal to sign such documents. It was further ordered that appellant not pledge any assets of the estate subject to ancillary proceedings in order to borrow funds for any purpose nor remove any assets from the District of Columbia without first obtaining approval from the Superior Court; and that appellant return within ten days from the date of the order all cash assets subject to ancillary administration located outside of the District of Columbia, to a District of Columbia banking institution or else be

8

forthwith removed. It was further ordered that Mr. Richards give an additional bond in the penalty of $270,000 to "secure the interest of Barbara J. Richards and Elizabeth Ann Richards in said estate." This provision was also under penalty of removal as Ancillary Executor.

Appellant failed to comply with the order of December 10, 1973 and on December 20, 1973 was removed as Ancillary Executor. He thereafter appealed from that order but there was no stay of execution. Accordingly, on January 7, 1974, the Superior Court, Probate Division, ordered that John L. Hamilton, Esq., a disinterested member of the Bar be appointed Ancillary Administrator d.b.n., c.t.a. upon an undertaking in the sum of $346,000. Appellant was also ordered to file an accounting of his administration forthwith. The sale of the decedent's one-half interest in the District of Columbia apartment property was by order of the Superior Court dated May 7, 1974 authorized and directed. Again Mr. Richards appealed that order without, however, a stay of execution.

## FEDERAL ESTATE TAX RETURN

Under the Internal Revenue Code [11] the Federal Estate Tax Return of the Estate of Mrs. Parsons was due and tax shown thereon was payable on or before November 19, 1973, nine months after the date of death.

On November 5, 1973, appellant applied for and received an extension of six months to May 19, 1974 to file the return. At the hearing below a copy of the return was received in evidence showing a tax due in the amount of $130,931.37. This return was filed prior to May 19, 1974 but was accompanied by a check in the sum of $10,000 only, as a part payment. On July 8, 1974, the Internal Revenue Service notified Mr. Richards that the sum of $131,910.59 was due by July 25, 1974 and that this sum included a penalty in the sum of $5,741.94 and interest in the amount of $5,236.68. When the court below inquired of Mr. Richards as to why he did not pay the federal estate tax on time and stated, "It

---

11. Int. Rev. Code of 1954, §§ 6075 (a) and 6151 (a).

looks to me as if you cost the estate about $11,000 by not paying the federal estate taxes on time," the appellant replied:

"I, because of the appeal which was pending from the judicial sale prior to the decedent's death, and its pendancy throughout the early months of the administration, and its pendancy at this time, incumbered my ability to exercise my duties."

A petition was promptly filed in the Superior Court by the Ancillary Administrator d.b.n., c.t.a., John L. Hamilton, Esq., for an order authorizing and directing him to make payment of the federal estate tax. This authorization was granted by order of the Superior Court of the District of Columbia dated July 19, 1974. Mr. Richards also appealed from that order.

## ANCILLARY ADMINISTRATION IN VIRGINIA

The primary asset of the decedent subject to administration in the State of Virginia was certain improved real property located at 109 Bay Colony Drive, Virginia Beach.

Appellant did not obtain Letters as Ancillary Executor in Virginia until September 28, 1973, and 12 days thereafter, on October 9, 1973, he communicated with appellees' attorney, David B. Nicholson, Esq., stating that should it be the desire of his clients, Barbara and Elizabeth Richards, to disclaim their interest in the aforementioned real property and "thereby avoid the necessity of paying inheritance taxes thereon," that such an election and filing of the disclaimer would have to be accomplished by December 19, 1973, ten months from the date of decedent's death.

The following colloquy took place between the court and Mr. Richards at the hearing below concerning the proposal to his sisters:

"THE COURT: Well, you wanted them to disclaim their interest, which was a two-thirds interest, right? You had a third.

MR. RICHARDS: I had in mind that they do that only if it could be part and parcel of a settlement, which would save some tax money if they did disclaim.

THE COURT: Well, why didn't you offer to disclaim your own third interest?

MR. RICHARDS: That's my home, Your Honor. I reside there.

THE COURT: Well, how much money would it have saved in taxes?

MR. RICHARDS: Well, it would have saved $600.

THE COURT: But you wanted them to disclaim an interest worth $36,000 or $37,000 in order to save $600 to $800 in taxes?

MR. RICHARDS: That's what I wanted to make clear.

THE COURT: That's quite a lot to ask of them, isn't it?

MR. RICHARDS: No. I had no intention of swindling my sisters out of their equity in the house, and I want to make that clear to Mr. Nicholson."

At the conclusion of the hearing Judge Mathias referred to Mr. Richards' failure to comply with the orders of the Superior Court of the District of Columbia relating to the consummation of the sale of the apartment house to raise the cash necessary to pay taxes and debts, his subsequent removal as Ancillary Executor and the appointment of Mr. Hamilton in his place; and the final consummation of the sale of the District of Columbia property by Mr. Hamilton and the payment by him of the federal estate taxes. The court pointed out that the amount paid included approximately $11,000 comprising penalties and interest. Judge Mathias stated: "This $11,000 represents a loss to the estate which the court finds was occasioned by Mr. Richards' failure to comply with the Court's order in the District of

Columbia, and failure to properly concern himself with the interests of the estate."

With respect to the appellant's performance of his duties as principal administrator in Montgomery County, the court stated:

> "Here in this county he has also demonstrated a lack of concern for the interests of the estate and the other legatees, who are his two sisters. Not only has he failed to file his inventory on time and fail [sic] to file his initial account on time, but the Court finds that the initial account is not in proper form at the present time and the Court would not pass the account as submitted. *The Court finds specifically that the personal representative, Mr. Richards, is either unable or incapable, with or without his fault, to discharge his duties and powers effectively. We further find that he has mismanaged the property of the estate by failing to take the necessary steps to raise the cash to pay the federal estate taxes.* Furthermore, that he has failed, without reasonable excuse, to perform his duty of filing the inventory of the estate on time, and filing a proper initial accounting on time. Accordingly the Court, for the reasons stated, will grant the motion to remove Mr. Richards as the personal representative of this estate and will appoint a successor personal representative upon suggestion of the other legatees who are beneficiaries as to two thirds of the residuary estate. The Court directs Mr. Richards to turn over promptly to the successor personal representative all assets and all records thereof concerning the administration of this estate." (Emphasis added.)

## II

We glean from appellant's brief and oral argument that his contention is in essence that there was a procedural infirmity in the proceedings below as a result of which he

was denied due process. He also asserts a substantive denial of due process on the ground that the court failed to grant him a continuance and acted upon insufficient evidence in connection with the order of removal.

First, with respect to his contention that the court improperly permitted the employment of a "motion" for an Order to Show Cause rather than the "petition" specified in Art. 93, § 6-306 (b) [12] we find appellant's position to be utterly without support. The statute provides that a hearing shall be conducted by the court prior to the removal of any personal representative. It further provides:

> "The hearing may be held on the motion of the court, on motion of the register, or on *written petition of an interested person.* Notice of hearing shall be given by the register to all interested persons. After notice has been given to the personal representative, he may exercise only the powers of a special administrator as permitted by § 6-403." (Italics added.)

Concerning a claimed difference between a petition and a motion, Judge Gilbert recently stated for this Court in *Beltway Homes, Inc. v. Florent B. Hughes, et al.,* 26 Md. App. 146, n. 2:

> "*Black's Law Dictionary* (4th ed. 1968), in discussing the difference between 'petitions' and 'motions,' states at 1302: 'The word 'petition' is generally used in judicial proceedings to describe an application in writing, in contradistinction to a motion, which may be *viva voce.* . . . The principal distinction between motions and petitions lies in the fact that motions, though usually made in writing, may sometimes be made orally, while a petition is always in writing. . . .' It is indubitable that the Court of Appeals in New Freedom Corp. v. Brown, *supra,* [260 Md. 383, 272 A. 2d 401 (1971)] utilized the word 'petition' interchangeably with

12. This is now Estates and Trusts § 6-306 (c).

the word 'motion.' *Unless the matter is orally made, the distinction between 'petition' and 'motion' is without a difference. Therefore, in this case, inasmuch as the motion to set aside the decree was in writing, it is indistinguishable from a petition.*" (Emphasis added.)

Here, the motion for an Order to Show Cause [13] was in *writing*. It was supported by two pages of points and authorities, and by an eight-page affidavit of the moving parties to which were annexed seven exhibits, consisting of over forty pages. It was, in the words of Judge Gilbert, "indistinguishable from a petition."

In a feeble, if not, indeed, frivolous attempt to buttress his argument that he was denied procedural due process, appellant argues that "he would have [had] certain discovery procedures available to him as well as other pleadings." It is sufficient to note that he filed an opposition to the motion on August 15, 1974, and had an abundance of time — a period of approximately seven weeks — from that date until the hearing date specified in the Order, October 7, 1974, within which to prepare.

Nevertheless, at the hearing the appellant offered no documentary evidence on his own behalf, nor did he avail himself of the opportunity to testify. While, at one point, he suggested to the court that he might wish to call his sisters as witnesses, since they were present in the courtroom and available for questioning concerning their detailed affidavit and supporting documents, he at no time called either of them. The transcript of the proceeding does reflect that he offered in evidence a copy of his bank account, was frequently questioned by the court concerning his activities and argued in his own behalf. Prescott, J. (later Chief Judge), pointed out in *Wheatley v. Fleischmann, supra:* "The *onus* is upon him [the executor] to show how the estate entrusted to him has been administered; and the law

---

**13.** The propriety of initiating a removal by an Order to Show Cause is plain, Tublin v. Schockett, 178 Md. 212, 12 A. 2d 616 (1940); and the proceeding was, of course, plenary rather than summary. Wheatley v. Fleischmann, 216 Md. 157, 140 A. 2d 152 (1958).

14

imposes upon him the duty to protect the estate under his care." We deem appropriate also the observation of Judge Offutt in *Tublin v. Schockett, supra,* concerning the responsibilities of Orphans' Courts: "In dealing with charges affecting administrators and executors they are and should be intolerant of technical defenses which would permit such officials to avoid a full and candid disclosure of the manner in which they have discharged their duties."

We are mindful of the proposition of law reiterated in the opinions of the Court of Appeals that "the right to administer . . . is a valuable one; consequently an executor or administrator will not be removed except for legal cause, and after citation and opportunity to be heard." *Schmidt v. Chambers,* 265 Md. 9, 38, 283 A. 2d 356 (1972); *In the Matter of the Estate of Underwood,* 233 Md. 394, 196 A. 2d 877 (1964); *Johnson v. Macaboy,* 226 Md. 23, 30, 171 A. 2d 474 (1961).

Appellant also calls to our attention the statement in 1 Sykes, *Maryland Probate Law and Practice,* § 503 p. 465, cited with apparent approval by the Court of Appeals in *Smith v. Waller,* 225 Md. 94, 169 A. 2d 454 (1961), that the testamentary law affords ample means of compelling a personal representative to proceed with the proper discharge of the duties of his office and that "removal therefore is usually the last resort." In *Waller,* Judge Hammond (later Chief Judge) expressed the then state of the law in the following language:

> *"This Court has said and held repeatedly that, although an executor will be unhesitatingly removed for serious cause, yet, in the absence of fraud, bad faith, collusion or breach of trust and prejudice to the estate, letters will not be revoked until the executor in default has failed to comply with an order to make good his default or omission."* (Italics added.)

Subsequent to *Waller,* the General Assembly of Maryland enacted a comprehensive recodification and revision of the

testamentary laws[14] which include specific statutory grounds for the removal of a personal representative. Laws of Maryland 1969, ch. 3, § 1, codified as Art. 93, § 6-306 (a), now Estates and Trusts, § 6-306 (a). The statutory standards relating to removal provide that a personal representative "*shall* be removed from office upon a finding by the court" that he:

"(1) Misrepresented material facts in the proceedings leading to his appointment;

(2) Willfully disregarded an order of the court;

(3) Is unable or incapable, with or without his own fault, to discharge his duties and powers effectively;

(4) Has mismanaged property;

(5) Has failed to maintain on file with the register a currently effective designation of an appropriate local agent for service of process as described in § 5-105 (a) (6); or

(6) Has failed, without reasonable excuse, to perform a material duty pertaining to the office."

Where any of the above causes for removal are found, after notice and hearing as provided in the statute, removal is mandatory. By contrast, there remain other testamentary law provisions under which removal is permissive. Thus § 7-306 provides that upon failure to render an account or file a certificate as required, a personal representative *may* be removed in accordance with the procedural requirements of § 6-306.[15] In cases of failure to file or late filing of an account, the statement in *Sykes* that removal is to be ordered only as a last resort may under proper circumstances retain some viability. We see no basis for its

**14.** *See,* Statutory Reform In The Administration of Estates of Maryland Decedents, Minors and Incompetents, 29 Md.L.Rev. 85 (1969).

**15.** *See* generally, Planning Commission v. Silkor, 246 Md. 516, 229 A. 2d 135 (1967). The word "may" usually conveys a permissive rather than mandatory meaning.

16

application, however, to the causes for removal specified in §
6-306, *supra.*

In the instant case the court relied upon not only the
appellant's failure to file his inventory and account on time
but also upon subsections 3 and 4, *supra,* having made a
finding that the personal representative was "unable or
incapable, with or without his own fault, to discharge his
duties and powers effectively" and had "mismanaged
property." The record amply supports Judge Mathias'
findings and removal was mandatory. The personal
representative has displayed an inability to discharge his
duties and powers effectively not only in connection with the
principal administration in Maryland but also in the
ancillary proceedings in the District of Columbia where he
was removed from office in consequence of defiance of the
orders of the Superior Court. Furthermore, the loss to the
estate of $11,000 in penalty and interest charges because of
the late payment of the federal estate tax is obvious
mismanagement. This is a relatively uncomplicated estate.
Administration should by now have been completed and
distribution have been made to appellant and his two sisters.

We would further note that under Rule 1086 we may
reverse the findings of fact of the lower court only in the
event that the court was clearly erroneous and in this
instance we could not say that it was. *Schmidt v. Chambers,*
*supra.*

> *Judgment affirmed; mandate to*
> *issue forthwith; appellant to*
> *pay the costs.*